### ABE WEINBERG

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 17, 1904.*

1. CRIMINAL LAW—*what tends to show knowledge that the property was stolen.* That one from whom the accused is charged with receiving stolen property had some $700 worth of jewelry, which he offered at much less than its value, and that the accused did not list the articles which he bought, in a book kept for the purpose, but at first denied the purchase to the police, is sufficient to go to the jury upon the question of his guilty knowledge.

2. SAME—*what is sufficient proof of venue.* It is sufficient proof of venue if the evidence, as a whole, leaves no reasonable doubt as to the act having been committed at the place laid in the indictment, even though no one testifies, in express words, where the offense was committed.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

MORITZ ROSENTHAL, and BENJAMIN C. BACHRACH, for plaintiff in error.

H. J. HAMLIN, Attorney General, and FREDERICK L. FAKE, Jr., for the People.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was an indictment returned to the criminal court of Cook county against the plaintiff in error, charging him with receiving and concealing stolen property. The

indictment alleges the property to have been that of Mary H. Sparrow, and consisted of the following articles: eight rings, one neck chain, one charm, two earrings and one satchel.

Upon the trial it appeared that Miss Sparrow was staying at No. 232 Michigan avenue, in the city of Chicago, and that on the night of the 29th of July, 1903, her room was entered by a colored man by the name of Jackson, and a small satchel or hand-bag stolen from under the pillow upon which she was sleeping, which bag contained the articles above enumerated; that Miss Sparrow at once reported her loss to the police department and two officers were detailed upon the case; that after search had progressed for several weeks, a colored man by the name of Stokes informed the officers that Jackson, who was then confined in the county jail of Cook county charged with the commission of another crime, had committed the burglary and had sold the jewelry to plaintiff in error. A search warrant was procured, and the two officers, Stokes and Miss Sparrow went to the place of business of the plaintiff in error, who denied the purchase of the jewelry or that he had ever seen or heard of Stokes or Jackson before that day. Search was commenced under the warrant, and before it had progressed far the plaintiff in error admitted that he had purchased the jewelry stolen from Miss Sparrow, but claimed to have sold it to a person residing on the west side, and offered, if given three hours, to go to the west side and produce the articles purchased by him of Jackson. He was arrested and taken before the inspector at the Harrison street station, where he again admitted having had the jewelry in his possession. He was later given an opportunity to produce the jewelry, but never did so.

No evidence was introduced on behalf of plaintiff in error, and the jury returned a verdict finding him guilty as charged in the indictment, and fixing the value of the goods purchased by him of Jackson at $100.

It is urged as ground for a reversal, first, that the evidence is insufficient to support a conviction; second, that the venue was not proved as laid in the indictment; and third, error in giving instruction No. 3 on behalf of the People.

*First*—It appears from the testimony of Miss Sparrow that she was robbed at 232 Michigan avenue, in Chicago, Cook county, Illinois, during the night of July 29, 1903; that as soon as she discovered her loss she reported the same to the police department; that the officers assigned to duty called upon her, and at their request she accompanied them to the place of business of plaintiff in error, and that while there he admitted to her and the two officers that he had purchased her jewelry from Jackson. The witness Stokes testified that between five and six o'clock on the morning of July 30 Jackson called at his room and showed him jewelry answering the description of that described as having been stolen from Miss Sparrow; that Jackson requested him to help sell it; that they went together to 1307 State street, the place of business of plaintiff in error, and that Jackson sold seven rings and the chain and charm to plaintiff in error for $50; that plaintiff in error at this time asked Jackson where he got this jewelry, and that he answered, "O, they are all right; I got them down there;" that plaintiff in error then asked who Stokes was, and that he replied, "O, he is all right; I just brought him with me; he is all right;" that plaintiff in error then requested Stokes to step to one side and told his wife to show him some pen knives, and that while she was showing him the knives the plaintiff in error purchased the jewelry of Jackson. Jackson, while on the stand, admitted the burglary, and testified that he sold the seven rings and the chain and charm taken from Miss Sparrow to plaintiff in error for $50, substantially corroborating the testimony of Stokes. The officers testified that they were connected with the Harrison street station; that they were assigned to this

case, and that Stokes informed them that Jackson, who was then in jail, had stolen the jewelry and what disposition he had made of it; that they went to the place of business of the plaintiff in error and charged him with having the property, which he denied; that they examined the book in which the plaintiff in error told them all property purchased by him was listed, and failed to find this property described therein; that they started to make search under the search warrant, and that after it had progressed for about ten minutes the plaintiff in error stated that they need search no further,—that he had purchased the jewelry and had sold it again, but if given three hours in which to go to the west side he would produce it; that they arrested him, took him to the Harrison street station, and that he was afterwards released on bail and made engagements at several times to meet them for the purpose of returning Miss Sparrow's property; that he finally told them the settings had been destroyed and new ones would have to be made, and later said the person to whom he had sold the property refused to turn it back to him except in full payment, and that he could not comply with this condition.

Miss Sparrow testified that the value of the property taken, which Jackson states he sold plaintiff in error, was about $700. The fact that the articles stolen were of the value stated by Miss Sparrow is not controverted. The fact that Jackson had so large a number of articles of women's jewelry in his possession, which he offered for sale at much less than their value, should have put an honest man upon his guard, and the ease with which Jackson succeeded in satisfying plaintiff in error's quest for information, together with the fact that he did not list the jewelry upon his book and denied buying it when charged with having it in his possession, was evidence of guilt, and was sufficient evidence of guilty knowledge to justify the court in refusing to take the case from the jury, and warranted the jury in returning a verdict of

guilty against the defendant.  In *Huggins* v. *People*, 135 Ill. 243, which was a case where the facts were very similar to the facts in this case, it was said (p. 247): "The knowledge of the prisoner, in this sense, is the gist of the offense, and must be found by the jury as a fact.  In determining whether the fact existed, the jury will be justified in presuming that the prisoner acted rationally, and that whatever would convey knowledge or induce belief in the mind of a reasonable person, would, in the absence of countervailing evidence, be sufficient to apprise the prisoner of the like fact, or induce in his mind the like impression and belief."

*Second*—While it does not appear from any express statement of any witness that the goods were sold in the county of Cook and State of Illinois, it was expressly stated by Miss Sparrow that the burglary took place in said county, and this, considered with the testimony of the six witnesses as a whole, we think proved the venue as laid, with sufficient clearness.  It is not necessary that some one testify, in so many words, to the place where the offense was committed, but it is sufficient if the evidence, as a whole, leaves no reasonable doubt as to the act upon which the indictment is based having been committed at the place laid in the indictment.  (*Porter* v. *People*, 158 Ill. 370.)  "The venue of an offense may be proven like any other fact, in a criminal case.  It need not be established by positive testimony nor in the words of the information, but if, from the facts appearing in evidence, the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient." *Weinecke* v. *State*, 34 Neb. 14.

*Third*—It is said instruction No. 3 given on behalf of the People is meaningless and misleading.  While the instruction was bunglingly drawn, we do not think the jury were misled thereby.

The judgment of the criminal court of Cook county is affirmed.                                    *Judgment affirmed.*