THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN F. O'GARA, Plaintiff in Error.

*Opinion filed December 22, 1915.*

1. CRIMINAL LAW—*proof must show that offense was committed in the county alleged.* Where the evidence in the record does not affirmatively show that the offense charged was committed in the county alleged in the indictment the judgment of conviction must be reversed.

2. SAME—*court will not take judicial notice that certain streets are in Cook county.* Testimony that the killing occurred in Burney Bros.' saloon, 2943 Lyman street, or at the southwest corner of Lyman and·Keeley streets, does not show that the killing occurred in Cook county, as alleged in the indictment, as the court will not take judicial notice that such location is in Chicago or anywhere else in Cook county.

3. SAME—*general motion for new trial saves point that venue was not proved.* Where a motion for a new trial in a criminal case is general, without setting forth the specific grounds of the motion, all grounds for a new trial must be treated as raised in the lower court, including the point that the venue was not proved, and they are saved for review under proper assignments of error.

4. SAME—*rule as to impeaching testimony of one's own witness.* If a witness unexpectedly gives testimony against the party calling him, such party may, by examining the witness, show that he is giving unexpected testimony and may specifically call his attention to his former statements at variance with his testimony, but if the witness denies the alleged statements the party is concluded by his answers and cannot impeach him by a written statement or by other witnesses; but the party is at liberty to prove by other witnesses the facts sought to be proved by the witness giving the unexpected testimony.

5. SAME—*when instructions for the People are erroneous.* If there was no assault by the defendant upon the deceased and no struggle prior to the shooting, it is error for the People's instructions to refer to the defendant's act in shooting the deceased as an "assault," and to state the law with reference to the defendant declining further struggle.

6. SAME—*the People's instruction should not refer to the defendant's "claimed" self-defense.* In a murder trial, where the evidence for the defendant is that the shooting was in self-defense, it is error for an instruction for the People to refer to "what is claimed to be his self-defense."

7. SAME—*a large number of instructions tends to confuse jury.* A few instructions aptly worded and containing correct statements of the law are helpful to the jury, but a large number of voluminous instructions, even though they may state correct principles of law, tends to mystify and confuse the jury, and the practice of giving an unnecessary number of instructions should be discouraged.

8. SAME—*when instructions are properly refused.* Instructions are properly refused where they are either erroneous in form, as assuming the facts upon which they are based, or they do not correctly state the law or are covered by other given instructions.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN M. O'CONNOR, Judge, presiding.

O. J. C. WRAY, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and C. H. LINSCOTT, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, John F. O'Gara, (herein referred to as the defendant,) was tried by a jury in the criminal court of Cook county and was found guilty of the murder of Albert Plinski. Motions for new trial and in arrest of judgment were overruled and the defendant was sentenced on the verdict by the court to serve a term of fourteen years in the penitentiary.

Albert Plinski was a carpenter and upholsterer, thirty-four years of age and a consumptive. The defendant had been a teamster and a motorman on the street cars, was twenty-seven years old and apparently strong and in good health. Plinski had formerly been convicted and sentenced for murder, which fact was known to the defendant. Both the defendant and the deceased were members of the Amethyst Athletic Club,—"a place for the boys to go and hang out, in the basement of Burney Bros.' saloon, at 2943 Lyman street," as described by one of the witnesses. It appears from the evidence that the deceased and the defend-

ant met several times in the basement and in said saloon on January 24, 1915, and had had words between them indicating ill-feeling prior to the killing of Plinski, between four and five o'clock in the afternoon of that day. Burney Bros.' saloon is said to be at the southwest corner of Keeley and Lyman streets, Chicago, with the entrance facing north on Lyman street, which runs east and west. The entrance leads through double screen doors, on the right and south side of which is a cigar case extending south to a partition about six feet long at the north end of the bar and extending east toward the east wall of the saloon. The bar extends south from the partition about fifteen feet. A piano stood against the east wall of the saloon, opposite the center of the bar. There was a stairway leading down into the basement at the west wall of the room just west of the south end of the bar. James Sullivan, a witness for the State, testified, in substance, that he met John Harris and the defendant outside of the saloon just before the shooting; that they went into the saloon together, and "then we lined up along the bar near the partition and had a drink, and I paid for it;" that then Plinski and Branek, a chum of Plinski weighing about 225 pounds, came up from the basement and stood at the bar a few feet south of them, Harris next to Plinski, the defendant next to Harris, Sullivan next to the partition and Branek near the south end of the bar; that Plinski ordered a drink and didn't pay for it, and the bar-keeper asked him why he didn't pay for it; that Plinski replied, "Why don't you hush up? Why don't you holler at some of them guys that hang around all the time and never pay for a drink?" that the defendant said to him, "You referring to me?" and Plinski replied, "Yes, you s— of a b—; you are around here all the time and you never pay for a drink," and continued to use vile language to him and started towards him, but Branek stopped him; that Plinski then broke from Branek to the bar and said to the defendant, "You s— of a b—, I

am going to get you," and then rushed towards the defendant with his right hand in his overcoat pocket; that when he got up to the defendant witness heard a muffled sound between them, "like a shot or something;" that Plinski went on north towards the defendant with Branek two or three feet in his rear and that the defendant retreated north towards the partition, and that as Plinski continued to go towards him the defendant shot him in the abdomen twice and then shot Branek in the side as he rushed toward the defendant.

The main issue in the evidence is as to whether or not Plinski and Branek had made any effort or demonstration to strike or do violence to the defendant at the time and before the shots were fired. The defendant testified that Plinski shot at him with a revolver in his overcoat pocket before he fired, and that both of them were side by side rushing on to him, with hands upraised to do him violence, when he fired. The State's evidence tended to show that Plinski had no revolver, and that neither he nor Branek was making any effort to do defendant violence at the time or before the shots were fired. The witnesses testified generally that there were three or four shots fired, and the evidence discloses that two or three days after the shooting a bullet was found in the piano that stood about southeast of the parties when the defendant fired his shots and that no bullet hole was in it before the shooting. The evidence shows also that the defendant went home before the shooting and armed himself with the revolver just after one of their quarrels. The wife of the deceased testified that the defendant asked her, just before the shooting, if her husband had a revolver, and he denied her statement. The defendant testified, among other things, that he shot Plinski because Plinski threatened to kill him that morning, and then added, "He chased me out of the saloon." It was in evidence, also, that the deceased's overcoat was on fire just after the shooting, but what part of it was on fire does not

appear from the evidence. The evidence is in great conflict and scarcely any two of the witnesses agree on the main points.

A careful consideration of all the evidence in the record shows that the only proof of the venue is that the killing of Plinski occurred at Burney Bros.' saloon, 2943 Lyman street, or at the southwest corner of Lyman and Keeley streets. The indictment charges that the killing occurred in the county of Cook and State of Illinois. It does not appear from the testimony of any witness in the case in what county, city or village the killing occurred. Every one of the witnesses gave his residence in the same way, by street and number, without stating in what county, town or city he resided. There is no testimony in the record showing, by necessary inference, that the streets mentioned are in the city of Chicago or elsewhere in Cook county. There is no rule of law that requires this court to judicially know that those streets and numbers are in Chicago or anywhere in Cook county. Where the evidence in the record does not affirmatively show that the offense charged was committed in the county alleged in the indictment a judgment of conviction must be reversed, as has been frequently declared by this court. *Dougherty* v. *People,* 118 Ill. 160; *Moore* v. *People,* 150 id. 405; *Porter* v. *People,* 158 id. 370; *Gunning* v. *People,* 189 id. 165.

It is argued by the People that the proof of venue was waived by the defendant as the point was not raised in the lower court. The motion for a new trial was a general one, without setting out the specific grounds of the motion, and under such a motion all grounds for a new trial must be considered as raised in the lower court and saved for review in this court on proper assignments of error, which were made on this record. *Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589.

Defendant insists that counsel for the People were improperly allowed to cross-examine and impeach their own

witness, Thomas G. Begeska. The State's attorney claimed he was surprised at the witness' answers. The rule is that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony against the party examining him, and to specifically call the attention of the witness to his former statements for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying. If, however, the witness denies the alleged statements the party calling him must be concluded by his answers, and cannot show, either by the written statement of the witness or by other witnesses, that the witness did, in fact, make those statements, either for the purpose of impeachment or as original evidence of the facts sought to be proved. He may, however, prove by other witnesses the facts sought to be proved by the witness giving such unexpected testimony. (*People* v. *Lukoszus,* 242 Ill. 101; *Chicago City Railway Co.* v. *Gregory,* 221 id. 591; *American Hoist and Derrick Co.* v. *Hall,* 208 id. 597.) The court ruled in accordance with the foregoing rules and committed no error in that regard.

The court erred in giving People's instruction No. 23, which is, in substance, the same as the one condemned by this court in *Foglia* v. *People,* 229 Ill. 286, and in *Filippo* v. *People,* 224 id. 212. The defendant's act in shooting Plinski is referred to all through this instruction as an "assault." An assault is an unlawful attempt, coupled with a present ability, to do a violent injury upon the person of another. Instead of the use of the word "assault" in referring to the acts of the defendant, the words "shot or shots," "blow or blows," should have been used. The defendant engaged in no struggle with the deceased before firing the shots and hence the last words are inapplicable, as he could not decline a further struggle that was never made. The first paragraph of instruction No. 6 given for

the People is also objectionable for the same reason as that given for the last part of said instruction No. 23. People's instruction No. 5 is erroneous, also, in assuming that the defendant made an assault on the deceased.

People's given instruction No. 34 is subject to the same criticism as instruction No. 13 discussed by this court in *People* v. *McGinnis,* 234 Ill. 68, for using the expression, "what is claimed to be his self-defense," and should not have been given.

Error is assigned by the defendant for the refusal of the court to give many other instructions submitted by him. We do not deem it necessary or advisable to discuss all or any of them. It is sufficient to say that the court did not err in refusing to give them. They were either erroneous in form, as assuming the facts upon which they were based, or did not state correct principles of law, or the principles therein announced were covered by other given instructions. The trial judge was greatly imposed upon by both parties in offering so many instructions. The People offered forty-one instructions and the defendant forty-nine. It is a matter of no great surprise that error has been detected in some of the given instructions. Such practice is altogether inexcusable. A few instructions aptly worded and containing correct statements of the law are helpful to a clear understanding of the law of the case by the jury, while too many voluminous instructions, even if stating correct principles of the law, tend strongly to mystify and confuse the jury.

The judgment of the court is reversed and the cause remanded.                    *Reversed and remanded.*