(No. 33001.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARCUS B. ARNOLD, Plaintiff in Error.

*Opinion filed January 20, 1954.*

JOHN O. WAGNER, and LOUIS L. BRESLER, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Plaintiff in error, Marcus B. Arnold, hereinafter referred to as defendant, was indicted for the crime of larceny from the person of one Edith Butz. On arraignment before the criminal court of Cook County defendant pleaded not guilty. He waived a jury trial and agreed to a trial by the court. After trial, the court found defendant guilty and sentenced him to the penitentiary for a term of from three to seven years. It is from that sentence that defendant now prosecutes this writ of error.

The record discloses that in the late afternoon of February 12, 1952, Mrs. Butz was waiting for a bus, along with several other people, at the corner of Randolph Street and Michigan Avenue in the city of Chicago. She felt someone disturb her purse and upon inspection she discovered her wallet was missing. She observed a man run from the crowd and cross the street. She pursued him until he disappeared in a crowd and behind a bus on the other corner. She ran to a nearby policeman and told him of the occurrence. He took her into the nearby Illinois Central Station waiting room where he entered the men's washroom. He ordered all of the occupants to leave. Defendant was the last person to depart from the washroom. Upon his appearance, Mrs. Butz immediately pointed him out as the culprit.

The officer "frisked" the defendant for weapons, and then called two plain-clothes men, officers Earsman and Klunk. Upon their arrival, they quickly "patted" him for weapons. They again "frisked" him as he entered the squad car, and a knife fell from his pocket. Defendant denied that the knife was his.

These officers took defendant to the police station. They testified that as they were alighting from the squad car defendant tried to break away and kicked officer Klunk, who thereupon slapped him and knocked him down, caus-

ing his head to strike the bumper and suffer a scalp laceration. In the station the officers required defendant to remove his topcoat and corduroy jacket. Upon a strict search of the jacket the officers produced a wallet, identified as belonging to Mrs. Butz, which they said came from the lining of the jacket. Defendant's pockets were found to contain three single dollar bills, a silver dollar and some change. Mrs. Butz testified her wallet, when stolen, contained three paper dollars, one silver dollar, some change and some papers.

Defendant protested his innocence, denied the knife produced as exhibit 2 was his or that he ever possessed it, and contended the officer produced the wallet only after he had taken the topcoat and jacket into an adjoining room, and out of defendant's sight. He maintains he did not see the officer remove the wallet from the jacket. Defendant also alleged that he suffered the scalp laceration upon being administered a beating by the officers when he refused to pick up the wallet from where it was thrown. He produced a bloody shirt which he alleged was the one worn on the occasion of the beating. Counsel for defendant contended the beating must have occurred in the station after he had removed his topcoat and jacket because no blood appeared on them.

It is first contended by defendant that the evidence presented fails to show that he was guilty beyond a reasonable doubt, and hence his conviction cannot stand. In support of this proposition defendant offers several explanations of the circumstances presented by the evidence, none of which are based on fact.

The record does show that Mrs. Butz recognized defendant immediately upon his exit from the men's washroom in the I.C. station as the man who stood beside her at the bus stop, and who ran away immediately after her purse was rifled. She described her wallet as containing three paper dollars, one silver dollar and some change.

Moreover, a wallet or purse containing identification as belonging to Mrs. Butz was found in the lining of defendant's jacket, according to the testimony of the officers who searched defendant. Defendant urges that the police either found the wallet or purse in the washroom or on the street, or someone else found it and gave it to them. There is nothing in the evidence to indicate that the police did not find the wallet or purse in the lining of defendant's jacket.

At the trial defendant's jacket was exhibited and the lining shown to have been resewn. The police officers testified that it had been resewn since they searched defendant. Defendant insisted that his wife had sewn the lining several days before his arrest. At no time was defendant's wife presented to corroborate his statement.

Where a jury is waived, the credibility of witnesses and the weight to be given their testimony are for the trial court who saw and heard the witnesses testify. This court will not set aside a conviction depending upon the weight of the evidence except to prevent apparent injustice. (*People* v. *Langer*, 384 Ill. 608; *People* v. *Viti*, 408 Ill. 206.) Obviously, the court found the witnesses for the prosecution to be more worthy of belief than those presented in defendant's behalf. From a careful consideration of the evidence we cannot say that the court was unjustified in finding the defendant guilty. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People* v. *Viti*, 408 Ill. 206; *People* v. *Thompson*, 406 Ill. 555.) Upon observing the defendant emerge from the washroom, Mrs. Butz immediately recognized his clothes and remembered his face as those of the man who stood beside her at the bus stop and then fled from her pursuit. She positively identified him as the man who picked her purse. Her credibility was undoubtedly established by the determination reached by the trial court. Moreover, her identification and accusation of defendant are substantiated by the other evi-

dence presented in this record. The weight of the evidence indicates the defendant's guilt, and leaves little room for doubt. No apparent injustice results from the judgment of the trial court.

Defendant next urges that the trial court was guilty of prejudicial conduct when he exhibited to counsel for defendant a chart of the physical markings of defendant at the time he was arrested, thus assisting the State's Attorney in introducing evidence. Also that the court was guilty of prejudicial conduct in questioning witnesses and in ordering the defendant's mother to answer questions with only "yes" or "no" on cross-examination.

In presenting the chart the court was merely asking information from counsel as to whether there were any other wounds which could account for the blood appearing on defendant's shirt. If anything, the exhibition of this chart tends to aid the defendant's cause, since it does not appear to correctly represent all of the scars on defendant's body, thus leaving its accuracy in question. There was no jury here to be prejudiced. The court explicitly stated that he was asking for information to ascertain for himself the exact source, or possible sources, of the blood.

The trial judge has a right to ask questions of witnesses or call other witnesses to the stand in order to ascertain the facts and elicit the truth concerning the issues at hand, even when there is a jury, providing he does so without showing any bias or prejudice. (*People* v. *Filipak*, 322 Ill. 546.) The judge's questions here indicate no bias on his part, but rather a desire to ascertain truth and fact with complete clarity. There was no jury here, hence the judge's actions could in no manner have tended to influence a jury, or prejudice it against defendant. Moreover, defendant failed to offer any objection to the court's conduct.

The court's instruction to the defendant's mother to answer "yes" or "no" on cross-examination was not preju-

dicial. The court, as is its duty, merely admonished the witness to answer the questions directly and responsively. Nothing in this record indicates that the admonishments were hostile in character. Again, no objections were raised to the court's action. There is no basis for asserting that this action by the court was prejudicial to the defendant. *People* v. *Kukulski,* 358 Ill. 601.

It is finally contended by defendant that the court erred in failing to order the People to produce police lieutenant Morris Berger, whom he claims came into the room where he was beaten, for the reason that the law requires all those present at an alleged beating to appear. The record indicates only that Morris Berger was called to bring a Band-aid for a cut on defendant's head. Defendant, the only person testifying concerning the alleged beating, never said Berger was present at the beating. He did say, however, that officers Klunk and Earsman were present and that no one else was present. Both officers testified. At no time did defendant request that Berger be produced, nor did he attempt to call him. *People* v. *Sloss,* 412 Ill. 61, relied upon by the defendant, has to do with the question of whether a confession is voluntary or not, and requires all those present at the examination of an accused to be produced or accounted for by the State in order to determine whether a confession offered in evidence was voluntary or made under duress. There is no question of the admissibility of a confession in the instant case.

We find no reversible error upon a review of this record, and consequently the judgment of the criminal court of Cook County is affirmed. *Judgment affirmed.*