14 Ill.2d 86 (1958)
150 N.E.2d 788
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error,
v.
EDDIE KIRKRAND, Plaintiff in Error.
No. 34632.
Supreme Court of Illinois.
Opinion filed May 21, 1958.
Rehearing denied June 18, 1958.
*87 *88 JOSEPH F. ELWARD, of Chicago, for plaintiff in error.
LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JOHN T. GALLAGHER, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE SCHAEFER delivered the opinion of the court:
In 1944 a jury in the criminal court of Cook County found the defendant, Eddie Kirkrand, guilty of armed robbery and found also that he had theretofore been convicted of burglary. He was sentenced to the penitentiary for life. In accordance with Rule 65-1 (Ill. Rev. Stat. 1957, chap. 110, par. 101.65-1,) he applied for and was furnished a transcript of the testimony of the proceedings at his trial. We allowed his application for writ of error and appointed counsel to represent him.
*89 In 1947 his conviction was reviewed in this court upon a writ of error (People v. Kirkrand, 397 Ill. 589,) and the State argues that he is not entitled to a second writ of error. There are opinions of this court that appear to lend support to this contention. (People v. Superior Court of Cook County, 234 Ill. 186; People v. Thompson, 392 Ill. 589.) Those decisions, however, are not applicable here. Of course a litigant must raise all alleged errors that can be asserted upon the record before the court or be held to have waived them. Piecemeal review is forbidden, because litigation must come to an end. The judgment here involved, however, was before the court in 1947 upon a common-law record. No bill of exceptions was filed because the defendant was unable to pay the court reporter for writing up the transcript of the testimony and no provision then existed for furnishing it at public expense. Under these circumstances, there was no waiver. We hold, therefore, that while all issues that could have been raised upon the common-law record are now barred, other errors can be asserted upon this writ of error.
The defendant contends that the evidence does not show his guilt beyond a reasonable doubt. He was accused of taking a blackjack from Walter Davis, a special police officer employed by Walgreen Company. Davis testified that he had alighted from an elevated train at 2:45 P.M. on October 1, 1943. As he passed through the station he saw a colored man in the ticket office. He continued on to the street, then returned to the ticket office and asked where the station agent was. The man replied that the agent was in the washroom. Davis returned to the street and a short time later saw the man emerge from the station. Davis followed, and the man then turned, pointed a pistol at Davis, took his blackjack and told him to walk in the other direction. Davis did so, but after he walked a short distance, he turned and fired two shots at the man. The man started to run. Davis testified that he pursued, fired two more *90 shots and then lost sight of the man for "a minute or two" when he went around a corner into an alley. He caught up with the man in the alley, finding him among some chicken coops, and held him there until the police arrived.
He testified that the man that he saw come out of the station was the man that he saw earlier in the ticket office. He also testified that the man he captured was not in his shirt sleeves and that he did not notice how the man in the ticket office was dressed, except that the upper part of his body was clothed in loud colors. Police officer Phillips testified that defendant was wearing a white shirt when he took defendant from Davis's custody. At the trial Davis first identified a colored policeman as the defendant, but then corrected himself. Davis further testified that officer Phillips took the defendant's gun from defendant. Phillips testified that he received the gun from Davis. Phillips testified he removed $103.05, including some rolls of dimes, from defendant. The rolls of dimes bore the initials of the station agent, and were identified by her as having been taken during the holdup. She also identified defendant as the person who had held her up in the ticket office.
Defendant testified, and he denied that he took Davis's blackjack or held up the station agent. He said that he had been in a tavern at the time of the robbery but had moved to the alley with a crowd of other curious persons when they heard shots, and there had been apprehended by Davis. He denied that the rolls of coins were found in his pockets and stated that the cash that he was carrying represented part of the proceeds of two Industrial Commission awards that he had received. He said that he carried the money because he intended to send a money order to his sick mother.
He testified positively that he had worked for a specific company during the morning of October 1, and had received his pay check of $52 or $53 on that day. The payroll *91 records of his employer, produced on rebuttal, showed that he had last worked there on September 22, 1943, and that there was no record of a pay check issued to him on October 1. He then testified that he had been setting pins in a bowling alley on the morning in question. By the argument of defendant's counsel, the attention of the jury was sharply focused upon the discrepancies between the testimony of Davis and that of the arresting officers as to the details of the arrest, and as to the clothing worn by the defendant.
In our opinion the verdict was justified by the evidence. To reach a contrary conclusion, it would be necessary to believe that many witnesses had perjured themselves, and there is no suggestion of any motive that might have induced them to do so.
The second contention of the defendant is that his appointed counsel so inadequately conducted his defense that he was deprived of due process of law. In this connection the defendant urges that the position of court appointed counsel is analogous to that of a guardian ad litem for an incompetent. On the basis of this analogy it is argued that appointed counsel "cannot waive any of the rights of the defendant,  unless the defendant, with full knowledge of the choice has himself made an informed judgment of waiver."
In our opinion this contention is unsound. We need not here determine the extent to which the analogy relied upon supports the defendant's contention. No inflexible rule can be applied to all of the many matters that call for the exercise of judgment in the course of a criminal trial. The lawyer who is appointed to represent an indigent prisoner is not thereby reduced to an automaton, nor is the duty that he owes to the court totally submerged in his duty to his client. The standard suggested would require that the equivalent of law school courses in substantive and procedural *92 criminal law be conducted during the course of a trial. That it would result in any real advantage to the defendant is dubious.
The standard that governs must be stated in terms that are less precise than the standard suggested, but it operates with greater sensitivity and discrimination. Appointed counsel is held to the standard of diligence and competence that is to be expected of the lawyer who is retained to represent his client. Whether or not he has improperly waived the rights of the defendant he represents must be determined upon an appraisal of all of the circumstances of the trial. In many instances tactical considerations will be important, and the conduct of counsel is evaluated in terms of those considerations. While careless and indifferent representation is not to be obscured by the invocation of tactical justifications, neither is conscientious effort to be depreciated by hindsight.
With this standard in mind we turn to the specific instances that the defendant relies upon to show inadequate representation. Defendant was arrested on October 1, 1943, and remained in custody until his trial commenced on March 27, 1944. During the interval two continuances were granted on motion of his counsel. It is now argued that his statutory right to be tried within four months was not properly protected. (Ill. Rev. Stat. 1957, chap. 38, par. 748.) Nothing in the record suggests a lack of diligence on the part of defendant's counsel. On the contrary, it appears that the defendant had said that there was a man who would testify that the defendant was present in the tavern until after the shots were heard. Defendant's counsel had been making repeated, though unsuccessful, efforts to get in touch with this man.
It is also argued that defendant's counsel failed in his duty because he did not object to the calling of three witnesses whose names were not endorsed on the indictment. (Ill. Rev. Stat. 1943, chap. 38, par. 729.) Of these witnesses, *93 police officer John Dawson was called as a rebuttal witness, and he contradicted testimony given by the defendant. The arresting police officers were James Foster and Clifford Phillips. Foster's name was endorsed on the indictment; Phillips's was not. Phillips testified that "Foster was in the armed forces, the last I heard of him." Actually Foster had been released from the army on February 12, and he was called as a rebuttal witness on the second day of the trial. The name of Margaret Jackman, the elevated company station agent, was not endorsed on the indictment. She testified in chief, but not until after Davis had first mistakenly identified a colored police officer as the defendant. Under these circumstances we can not say that the defendant's counsel should have objected and requested a continuance.
Defendant insists that his counsel failed to protect his right to have the evidence at his trial restricted to the taking of the blackjack with which he was charged in the indictment. It is contended that evidence of the holdup of the station ticket agent was admissible only to identify the defendant, and that instructions to that effect should have been requested. This contention is unsound as a matter of law. Testimony as to the station holdup tended to prove the defendant's motive in taking the blackjack as well as his identity. No authority is cited that suggests that a limiting instruction would have been proper, but it is unnecessary to decide the point. Defendant's whole case rested on a claim of mistaken identity. An instruction of the kind now urged might well have been thought tactically undesirable, for it would have underscored the adverse bearing of this testimony on the issue that defendant had raised.
Many other circumstances are relied upon to show that the defendant was inadequately represented at his trial. In each instance the argument is based upon the rigid doctrine for which the defendant has contended and which we have rejected. It is argued that defendant's counsel had *94 no right to stipulate that the defendant had committed a felony in 1937, but instead should have insisted upon formal proof. The fact of the prior conviction is not disputed. Appointed counsel is not required to insist upon useless formalities and it is likely that the defendant gained rather than lost by eliminating the necessity for formal proof of a matter that could not be controverted. In a like manner the stipulation that the exhibits should not be taken to the jury room is criticized. Here the tactical advantage in keeping from the jury room the pistol, the marked rolls of coins and many other harmful exhibits is unmistakable.
The defendant contends that his rights were prejudiced because his attorney failed to object to undue emphasis placed upon the holdup of the elevated station during the prosecutor's argument. In view of defendant's claim of mistaken identity, however, and the relevance of the testimony as to the holdup to that issue, as well as its tendency to establish a motive for taking the blackjack from Davis, the contention is unsound.
A typed statement of the questions put to the defendant by a police officer, and of his answers, was read to the jury and received in evidence as an exhibit. When the record was made up on this writ of error the text of that statement was not available and defendant's counsel is charged with dereliction of duty because he failed to preserve it or to see to it that the court reporter took it down when it was read to the jury. The defendant did not sign the statement. He admitted that he had made some of the answers, but denied that he had made others. It is not suggested that the statement would in any way be helpful to him. Responsibility for preserving this exhibit, offered in evidence by the prosecution, did not rest on defendant's attorney, nor was he at fault in failing to make sure that the court reporter took notes while it was being read. Objection is also made as to the failure to request certain instructions, *95 but we are of the opinion that no complaint can properly be made on that score.
After a careful examination of the record we are of the opinion that the evidence warranted the jury in finding the defendant guilty beyond a reasonable doubt, and that his rights were diligently protected in the trial court, as they have been ably asserted in this court.
The judgment of the criminal court of Cook County is affirmed.
Judgment affirmed.