(No. 34977.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CECIL PRIDE, Plaintiff in Error.

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

JULIUS L. SHERWIN and THEODORE R. SHERWIN, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State' Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The criminal court of Cook County, trial by jury having been waived, found the defendant, Cecil Pride, guilty of the crime of burglary as charged in the first count of the indictment upon which he was tried. The court sentenced the defendant to the Illinois State Penitentiary for a term of not less than one year nor more than five years. Follow-

ing the substitution of defendant's present counsel for the counsel who represented him at the trial, arguments were heard on motions for a new trial and in arrest of judgment. The motions were overruled, but the court vacated the original sentence and imposed a sentence for a term of not less than one year nor more than four years. Defendant prosecutes this writ of error to reverse the judgment.

Defendant's original counsel stipulated that if one Francis Nash were called as a witness he would testify that he was an employee of the Kenny Construction Company, that on the morning of January 17, 1957, he examined the company's movable trailer field office in which he had worked the day before and which he had locked when he left it, and that from such examination he discovered a window in the trailer had been smashed and 18 articles of personal property which had been in there when he locked the trailer were missing. On or about February 21, 1957, an engineer's transit, which defendant's counsel stipulated was one of the 18 articles burglariously taken from the trailer, was recovered from a pawn shop in Chicago.

Morris Bartman, an appraiser at the pawn shop, identified the defendant as the man who pawned the transit. Bartman testified that the defendant came to the pawn shop a week prior to February 16, 1957, and tried to pawn the transit but they could not agree on a price. He said the defendant came back a week later at which time the transit was pawned for $25. An application for loan was filled out at the time of this transaction. Upon the application card is a signature purporting to be that of the defendant. On the back of the card is the name of the transit and its serial number, the defendant's name and address, his driver's license number and his social security number.

The defendant denied that he committed the burglary, that he ever had possession of any of the property burglariously taken and that he pawned the engineer's transit. He testified that about a year prior to the time he was

arrested his wallet containing his social security card and driver's license was either stolen or lost.

The defendant contends that venue was not proved in this case, and, therefore, the conviction must be reversed and the cause remanded. It is a well established rule that the charge that a crime was committed in a particular county is a material averment and must be proved to sustain a conviction. (*People* v. *Allen,* 413 Ill. 69; *People* v. *Strook,* 347 Ill. 460; *People* v. *O'Gara,* 271 Ill. 138.) The issue here is whether the venue was satisfactorily proved.

It is true that there was no direct evidence to establish in which city, county or State the burglary occurred. The only evidence of venue was that a trailer office belonging to the Kenny Construction Company and located at 8900 S. Anthony Avenue during the progress of construction work on the Calumet Skyway was burglarized.

In many of its earlier decisions this court adhered to a technical view and insisted upon positive and strict proof of venue precisely as alleged. (See *e.g. Moore* v. *People,* 150 Ill. 405.) Applying the rationale of these earlier decisions the evidence in this case would not be sufficient to establish venue. We believe, however, that a more practical and realistic approach was used in *People* v. *Long,* 407 Ill. 210. It was there held that venue is proved when the evidence leads to the rational conclusion without reasonable doubt that the crime was committed in the county where the trial was held. This rule was laid down prior to the *Long case* (See *Weinberg* v. *People,* 208 Ill. 15; *People* v. *Ortiz,* 320 Ill. 205,) but it was in the *Long case* that it was applied more liberally. It was similarly applied in *People* v. *Allen,* 413 Ill. 69, wherein this court expressly overruled any judicial determination inconsistent with the *Long case.*

The defendant, nevertheless, cites *People* v. *O'Gara,* 271 Ill. 138, and *People* v. *Strook,* 347 Ill. 460, wherein it was held that a street address was not sufficient to prove

that the crime in each case was committed in Cook County. The court in these cases was following the rule that in addition to the street address, it is necessry that the record show specifically the city (*Sullivan* v. *People,* 122 Ill. 385,) or the county (*Weinberg* v. *People,* 208 Ill. 15) wherein the crime was committed.

An examination of the *O'Gara case,* the *Strook case* and many others following that line of reasoning leads to the inescapable conclusion that the court felt the witnesses had not stated the place where the crime was committed with sufficient specificity. This reasoning, however, presents a paradox in that it is inconsistent with common experience.

The statement attributed to Mr. Justice Holmes that judges need not be more naive than other men is particularly appropriate. They should use their common sense, common observation and general knowledge in considering evidence and drawing the proper inference from it. What is obvious to the layman should not be confounded by labeling it indefinite to the courts.

When a person is within a city or village and is talking with another person within the same city or village, he will describe a location within the said city or village by merely saying at the corner of such and such streets, or within the so-many-hundred block of such street or give the exact street and number. The person who hears this incomplete address knows to what city and State the speaker is referring, since this is the common way (though not the best way) to describe locations. If the location is in some other city or village than where the speaker and listener are, the name of that other city or village will often be given for clarification. This incomplete manner of description is also common when referring to a city or village. Thus, when persons in and around Springfield, Illinois, speak to each other of Springfield they naturally mean Springfield, Illinois; if they mean Massachusetts or

Missouri they say Springfield, Massachusetts, or Spring-field, Missouri.

This method of describing locations is not used solely by the man on the street. Our city newspapers when reporting an occurrence within the city of publication merely state the street and street number where it happened. If the occurrance was outside the city, the city wherein it happened is named either in the article or the date line. There is no reasonable doubt in anyone's mind who reads the newspaper just where the occurrence took place. Local television news-broadcasters use a like description in giving locations, and business men sponsoring local television programs will often so identify the location of their business establishment.

Describing a location by street and number is so much a part of our every day life that it cannot be ignored. A witness's testimony should not be considered in a vacuum divorced from our general knowledge as to the manner in which things are said. And so, common experience dictates that a witness testifying in Chicago, when speaking of 8900 S. Anthony Avenue, is speaking of 8900 S. Anthony Avenue in Chicago, Cook County, Illinois, although there very well may be an 8900 S. Anthony Avenue in some city other than Chicago, in some county other than Cook and in some State other than Illinois.

We would indeed be naive if we said under these circumstances that 8900 S. Anthony Avenue is an indefinite location. To suppose that the witness was speaking of 8900 S. Anthony Avenue in some other city, county or State would be unrealistic in the light of common knowledge as hereinbefore expressed. This is especially true since the trailer was being used in conjunction with the construction of the Calumet Skyway, a toll road located wholly within Cook County.

We recognize that the view expressed herein is not only a departure from our early holdings but tends to

extend the scope of the *Long* and *Allen cases*. However, we are of the opinion that it will improve and accelerate the administration of justice, a goal which we constantly strive to attain, without prejudicing the legal rights of an accused. To hold otherwise would be to protect an accused by the naivety of the court.

The next question presented is whether it was proved that the defendant committed the burglary. The stipulation by defendant's counsel as to what Francis Nash would testify if called as a witness amounted to a stipulation establishing the *corpus delicti* of the crime of burglary. He also stipulated that the engineer's transit recovered from the pawn shop was one of the 18 items burglariously taken from the trailer. This court in *People v. Pierce*, 387 Ill. 608, held, "* * * that an accused may, by stipulation, waive the necessity of proof of all or any part of the case which the State has alleged against him and that he cannot complain in this court of evidence which he has stipulated into the record." Thus, the prosecution had only to prove that the defendant committed the crime. It attempted to do this by proving exclusive possession by defendant of a portion of the stolen property soon after the commission of the offense.

It is a well-settled rule that the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the jury, or the trial court if a jury is waived, a reasonable doubt as to his guilt. (*People v. Wheeler*, 5 Ill.2d 474; *People v. Bennett*, 3 Ill.2d 357; *People v. Nixon*, 414 Ill. 125.) Before the rule may be invoked, however, exclusive possession must be proved. *People v. Wheeler*, 5 Ill.2d 474; *People v. Phelps*, 388 Ill. 618.

The evidence pertaining to exclusive possession was the testimony of Bartman, the pawn shop appraiser. He iden-

tified the defendant as the man who tried on one occasion to pawn the transit for $100 and who later returned to the shop and pawned the same transit for $25. He testified that the defendant signed the application for loan card and that he, Bartman, wrote on the back of the card the license number and social security number the defendant gave him.

The defendant denied that he was the man who pawned the transit and stated that he was never in the pawn shop until after he had been arrested for this crime. He also testified that about a year before his arrest his wallet containing his social security card and driver's license was either stolen or lost.

The defendant argues that Bartman has identified him, not as the man who pawned the transit, but as the man he saw in a picture from the bureau of identification. We see no merit in this contention. Bartman testified that the police showed him a picture of a man who he (Bartman) said looked like the pawner of the transit and that later while at the police station he identified the pawner of the transit in a "show up." Thus, Bartman identified both a picture of defendant and the defendant in person as the man who pawned the transit.

Much is made of the fact that defendant and his wife at the time of his arrest expressly consented to the search of their home and that none of the articles taken in the burglary were found therein. Defendant asserts that a guilty person would not willingly consent to a search of his home. We do not believe that this fact adds to his assertion of innocence; it may show only that the defendant and his wife were reasonably sure that none of the stolen articles would be found in their home.

It has been held repeatedly that the testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People* v. *Arnold,* 2 Ill.2d 92;

*People* v. *Viti,* 408 Ill. 206; *People* v. *Thompson,* 406 Ill. 555.) Bartman positively identified defendant as the man who on one occasion tried to pawn the transit and on another did pawn the transit; his credibility was undoubtedly established by the determination reached by the trial court. We cannot say that the court was unjustified in finding that defendant was the man who pawned the transit.

It is argued that even if Bartman's testimony is true, the possession by the defendant of the transit is not evidence that he acquired it in the manner alleged by the prosecution. This argument is based on the fact that the transit was first offered to Bartman approximately 25 days after the burglary. The defendant contends that 25 days is not so recent or soon after the burglary as to raise any inference that he took it as alleged.

The defendant cites *People* v. *Bennett,* 3 Ill.2d 357, as authority for the proposition that exclusive possession of stolen property 25 days after the commission of the crime is, as a matter of law, too remote in time for the rule to be invoked. In that case the court at page 364 stated: "In the latter case [*People* v. *Kubulis,* 298 Ill. 523], for example, the instruction was objectionable if for no other reason than that the possession of the defendant as established by the evidence was some 24 or 25 days after the commission of the crime. In such case the possession of the property cannot be considered to be recent or soon after the commission of the offense." This statement in the *Bennett case* is *dicta.* The contention by Bennett in that case was that an instruction given by the court required him to assume the burden of giving a satisfactory explanation of his recent possession of the stolen property. The evidence in that case showed Bennett to be in possession of the property within 6½ hours after the commission of the crime. Since the question of recency of possession was not involved, there was no reason for the court

to make a thorough examination and evaluation of the question.

In *People* v. *Malin,* 372 Ill. 422, the question of recency of possession was presented. In that case approximately six weeks had elapsed from the time of the burglary until the radio, a part of the proceeds of the burglary, was found in the defendant's possession. The court at page 427 stated: "Recency of possession is ordinarily a question of fact for the jury, or for the trial court when a jury trial has been waived, although in extreme cases it may become a matter of law. In determining this question, time is an important element to be considered, but is not the only one. The circumstances and character of the goods, their salability, whether they are cumbersome or easily portable are also among the factors to be considered. No definite time can be fixed as to when, as a matter of law, possession is or is not recent. [Citations.]" The court then held the question was properly one of fact in that case.

In *People* v. *Litberg,* 413 Ill. 132, the question of recency of possession was raised. There we followed the *Malin case* and held that the question was one of fact. In *People* v. *Nixon,* 414 Ill. 125, it was held that, "whether defendant's possession of the chain saw on March 28, 1949, was too remote to permit the inference that he stole it from Helle Lumber Company in late December, 1948, was a question of fact for the jury's determination." The court in the *Nixon case* discussed authorities from other States which held that the presumption arising from the possession of stolen property may prevail anywhere from two months to eleven months depending upon the particular circumstances in each case.

The rule in this State, notwithstanding the statement made in the *Bennett case,* is that precise time limits cannot be fixed as to when, as a matter of law, exclusive possession of stolen goods ceases to be recent. (*People* v. *Nixon,* 414

Ill. 125; *People* v. *Litberg*, 413 Ill. 132; *People* v. *Malin*, 372 Ill. 422.) The inference would prevail for a longer period of time in this case because the transit, unlike money, would not readily pass from hand to hand. The nature of the transit, like the nature of the chain saw in the *Nixon case*, rendered its disposition difficult. We cannot say, as a matter of law, that the exclusive possession by the defendant of the transit 25 days after its theft, is not sufficiently recent possession to warrant a conviction, in the absence of any evidence or circumstances tending to overcome the inference of guilt it raises.

Defendant contends that because the items that were stolen (twelve hats, two engineer's transits, one engineer's level, one calculator and two steel tapes) are not readily disposable, this fact tends to establish his innocence. He reasons that since the police searched his home and found none of these items, it should be inferred that he did not steal any of them. It must be remembered that where a jury is waived, the credibility of witnesses, the weight to be given their testimony, and inferences to be drawn therefrom are for the trial court who saw and heard the witnesses testify. (*People* v. *Arnold*, 2 Ill.2d 92.) This court will not set aside a conviction depending upon the weight of the evidence except to prevent apparent injustice. (*People* v. *Langer*, 384 Ill. 608; *People* v. *Viti*, 408 Ill. 206.) From a careful consideration of the evidence we cannot say that the court was unjustified in finding the defendant guilty.

Defendant contends next that his counsel at the trial represented him in such an incompetent manner that he was deprived of a fair and impartial trial. He asserts that his attorney improperly entered into numerous stipulations concerning evidence necessary to establish the People's case, that he improperly injected into the case certain irrelevant and immaterial evidence concerning prior arrests and incarcerations of defendant and that he failed to object to

improper questions by the prosecutor and failed to move to strike improper and prejudicial evidence elicited by the prosecutor.

We have held that where a defendant in a criminal case employs counsel of his own choice, his judgment of conviction will not be reversed merely because his counsel failed to exercise the greatest skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder. (*People* v. *Stephens,* 6 Ill.2d 257; *People* v. *Ney,* 349 Ill. 172.) When the representation of the defendant, however, is of such low caliber as to amount to no representation and reduces the trial to a farce, this court will reverse a conviction because the defendant, under these circumstances, has been deprived of his constitutional right to a fair trial. *People* v. *De Simone,* 9 Ill.2d 522; *People* v. *Morris,* 3 Ill.2d 437.

There are three stipulations to which defendant's counsel consented and which are now complained of. The first was to the corporate entity of Kenny Construction Company. The corporate entity of this company is not disputed. Counsel is not required to insist upon useless formalities and it is likely that the defendant gained rather than lost by eliminating the necessity for formal proof of a matter that could not be controverted. (*People* v. *Kirkrand,* 14 Ill.2d 86.) The stipulation as to the identity of the transit recovered from the pawn shop being the one taken in the burglary is also criticized. The identity of this transit is not disputed, since it could have easily been established by a comparison of serial numbers. It is again likely that defendant gained rather than lost by the stipulation. The third stipulation is to what Francis Nash would have testified if called as a witness. It is asserted that defendant's attorney had not determined if Nash was available or whether he would have testified as per the stipulation. There is nothing to support this assertion. For all that appears, it may have benefited the defendant to

stipulate to what Nash would testify instead of having him testify on the witness stand.

It is alleged that the defendant was prejudiced in the eyes of the trial judge when his counsel elicited from defendant and his wife testimony of defendant's prior arrests, incarceration and general misconduct. Defendant's counsel brought out the fact that the defendant 22 years earlier was involved in a robbery, that he was incarcerated for about five years and that he has worked continuously since he got out of the penitentiary in 1940. The apparent theory of injecting this evidence into the case was to establish the defendant as a hard working, industrious man who had learned his lesson. This court has held that the previous good character of an accused is a circumstance to be considered in applying the rule of recent, exclusive and unexplained possession of stolen property, and in cases where all the circumstances fail to do more than create but slight evidence of guilt, evidence of previous good character may repel all presumptions of guilt. (*People* v. *Litberg,* 413 Ill. 132; *Conkwright* v. *People,* 35 Ill. 204.) Defendant's counsel by proving defendant's good character for the past 17 to 22 years was invoking a recognized defense to the rule of recent, exclusive and unexplained possession of stolen property. This evidence of good character was intended to complement his denial of committing the burglary, of having possession of the transit and of pawning the transit.

On cross-examination the defendant volunteered that he had been incarcerted for 17 months in Bridewell during 1953 and 1954. This, of course, tended to rebut the testimony of his good character for the past 17 years. Defendant's counsel, in an attempt to restore some credence to the theory that defendant would not have committed this burglary, had defendant's wife testify to the circumstances leading to his incarceration at Bridewell. She testified that defendant got "mixed up" with some young girls in the

neighborhood and that it was she who had defendant incarcerated. She went on to say that he is a playboy with ladies but after being married to him for 22 years she had never known him to steal anything.

It is argued that it was a mistake to permit Mrs. Pride to testify as she did. It would seem, however, that her testimony helped the situation as it then existed rather than harmed it.

We feel that endeavoring to prove good character when defendant's character was subject to question shows at most poor judgment. It should be remembered, however, that we, along with defendant's present counsel, have the benefit of hind sight in evaluating the tactics defendant's first counsel used. The situation is like the Monday morning quarterback who says that the team should have run rather than passed after he knows that the pass did not work.

In examining defense counsel's conduct as a whole, the most that can be said is that he may have made some mistakes, particularly with regard to his failure to interpose objections or motions to strike when some should have been made. In *People* v. *Stephens,* 6 Ill.2d 257, 260, this court, in a situation similar to this, stated: "Few records examined in the light of sober second sight and calm reflection would fail to reveal situations where it might be said that counsel had not made the most of his opportunities. Human error is easily observed by those having the benefit of the second guess." From an examination of the entire record it cannot be said that the representation of defendant was of such low caliber as to require a reversal.

The last contention of the defendant is that the conduct of the prosecutor was grossly improper and highly prejudicial and that consequently he was deprived of a fair and impartial trial. He alleges that the prosecutor deliberately attempted to establish the *corpus delicti* by hearsay evidence; that he referred to and improperly attempted to

introduce in evidence a certain bureau of identification picture of defendant; and that he cross-examined the defendant and his wife concerning the details of other and unrelated offenses committed by the defendant.

The prosecution sought to establish the *corpus delicti* of the crime in this case by its first witness, Bernard J. Condon. On cross-examination it was discovered that the witness's knowledge of the crime was derived from a fellow employee, and the court, on defense counsel's motion, ordered that all the testimony based on hearsay be stricken. We fail to see that this hearsay evidence engendered prejudice, because it was later stipulated that Francis Nash would testify to the *corpus delicti* of the burglary if called as a witness.

It is alleged that defendant was prejudiced because there was interrogation concerning a picture obtained from the bureau of identification. The defendant argues that the only inference that could be drawn was that he had a police record of other and unrelated arrests or offenses. The defendant cannot complain of prejudice on this ground, for it was he who freely and voluntarily appraised the court in his case in chief that he had a police record.

The defendant contends that when he was cross-examined the prosecutor deliberately sought, and actually succeeded in improperly injecting into the trial, evidence of the defendant's prior conviction for another unrelated offense, as well as his prior general misconduct. The defendant on direct examination testified that he had worked continuously since 1940. The prosecutor on cross-examination asked the defendant if he had worked for nine months after September 28, 1953. The defendant's voluntary and unresponsive answer was, "If you mean about the stretch I did over in Bridewell, no, I wasn't working then." Under these circumstances, *People* v. *Donaldson*, 8 Ill.2d 510, *People* v. *Polenik*, 407 Ill. 337, and *People* v. *Black*, 367 Ill. 209, are not applicable as defendant contends.

The defendant's wife testified in direct examination that she had her husband incarcerated because he had gotten mixed up with some young girls in the neighborhood. On cross-examination the prosecutor asked Mrs. Pride about the girl involved. This was obviously an improper question and the People concede this fact in their brief. Although the question was improper, we are of the opinion that it could not have reasonably affected the result.

Since the record is free from substantial prejudicial error and the defendant's guilt has been clearly established, the judgmment of the criminal court of Cook County is hereby affirmed.

*Judgment affirmed.*