(No. 15092.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES ROBINSON, Plaintiff in Error.

*Opinion filed April 18, 1923—Rehearing denied June 7, 1923.*

1. CRIMINAL LAW—*character of proof required to support an alibi—burden of proof.* An alibi must be supported by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant, but the burden of proof, in its proper sense, is never shifted to the defendant, whether the defense is an alibi, or insanity, or other positive defense.

2. SAME—*where the defense is an alibi all defendant's evidence must be considered.* Where the defense is an alibi the jury must consider all the evidence introduced bearing upon that defense together with all the rest of the defendant's evidence, including that as to his good character, and if after consideration of all the evidence in the case there arises a reasonable doubt in the minds of the jury as to the defendant's guilt he should be acquitted.

3. SAME—*alibi must be sufficient to raise reasonable doubt of guilt.* Where the defense is an alibi, the reasonable doubt which the jury are to entertain to justify an acquittal is as to the defendant's guilt and not as to his whereabouts at the time the crime was committed.

4. SAME—*when defendant cannot complain of error in instructions.* A defendant cannot successfully complain of error in instructions when the same error, in substance, is contained in instructions offered by him and given by the court.

5. SAME—*when co-defendant's statement after conviction for another offense is not admissible against defendant.* Where several defendants are jointly indicted for robbery, it is not proper, in a separate trial of one defendant, to permit a co-defendant who had been convicted of another offense to testify to what he told the court about the robbery after his conviction of the other offense, but where the defendant makes no objection to such testimony he cannot afterward complain on review.

6. SAME—*a defendant must make timely objection to improper evidence.* A defendant must make timely objection or move to exclude improper evidence or he cannot complain, on review, of its introduction.

7. SAME—*when article taken by co-defendant is admissible to prove robbery.* On a separate trial of one of several co-defendants indicted for robbery, where the evidence establishes a conspiracy to rob, one of the stolen articles which the evidence shows was taken by one of the co-defendants to his home is admissible in evidence as an exhibit.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

JAMES R. QUINN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Charles Robinson (herein called the defendant) was indicted with Jacob Perske, Jacob Yonkowski, David Shyne and Louis Oliff for robbery of Sam Diamond with a pistol. There was a second count in the indictment for receiving stolen goods knowing the same to be stolen. Defendant was tried separately on the indictment, and the jury found him guilty of robbery in manner and form as charged in the indictment and found his age to be thirty-one years. The court on July 27, 1922, sentenced him to the penitentiary at Joliet for an indefinite term of years, not to exceed the maximum term fixed by the statute for the offense, and he has sued out this writ of error to review the judgment.

On December 22, 1921, Sam Diamond, a furrier, who had his place of business in Chicago, opened his store about nine o'clock that morning and while in the back part of his store heard a noise at the front door. He opened the door and three men came in with their hats pulled down over their foreheads, and one of them pointed a gun at him and told him that he would kill him if he made a move. The man then pushed him into the toilet with his face to the

wall, searched his pockets and closed the door. Diamond remained in the toilet about eight minutes, until everything was quiet in the store, and then came out and called the police. The robbers took from the store several fur coats, fur capes and seal scarfs, of the value of about $3700. Diamond was unable to identify any of the men who participated in the robbery, but testified that when he saw Robinson at the police station he heard him tell the police that he (Robinson) was the man that held him in the toilet. In the evening of March 10, 1922, police officers Foley, Costigan and O'Brien, while walking south on Peoria street, in Chicago, observed an automobile coming north with bright lights and as it came to a stop its lights went out. On going to the machine the officers found in it Yonkowski, Shyne and Isadore Lubin. Defendant was driving the car. The officers searched the men and the car and found three revolvers lying on the back seat.

The other evidence against the defendant on his trial was given mainly by Yonkowski for the People, and the substance of his testimony is the following: He (Yonkowski) was convicted on another charge of robbery before the same judge who tried this case. After the verdict was returned in the other case, and before he was sentenced, he stated to the judge that he wanted to tell the truth concerning the present case and made a statement as to the facts. His testimony is that he knew the defendant. On the day of the present robbery he was with the defendant and Shyne, and Shyne proposed that they make some money. The defendant, Shyne and a man named Perske went into Diamond's store while he remained in the automobile. Shyne and Perske afterwards came out with some furs and put them in the machine. Defendant did not come out of the store at that time, but after the furs had been loaded into the automobile all four of the men got into the machine and drove to Louis Oliff's place, but before they arrived there the defendant got out of the car at Fourteenth and Miller

streets. They drove to the rear of Oliff's place and took the furs into his place of business there and disposed of them to a man by the name of Miller for $650, payment being made by check. The check was handed to Shyne and he in turn gave it to defendant, who had come in, and the next day defendant and the witness cashed the check at a bank at Washington and Halsted streets and defendant got $215 for his share of the robbery. There was also evidence to the effect that A. C. Solomon bought the stolen furs from Oliff and gave Oliff his check for $650 drawn on the Market Trust Bank, located at Halsted and Washington streets. None of the bank officers could identify the parties who cashed the check. One of the fur pieces was recovered from Lena Perske, who testified that her son, a co-defendant in this case, had brought it to her home but that she did not ask him where he got it. All of the recovered furs were introduced in evidence and were identified by the prosecuting witness, Diamond, as the property that was in his store on the day of the robbery.

The defendant testified in his own behalf and denied all knowledge of the robbery and participation therein. He also denied receiving any money from the sale of the furs and cashing the check given by Solomon, and positively denied that he told the police that he was the man that had forced Diamond into the toilet. His further testimony was, in substance, that on the day of the robbery, and prior thereto, he was living at 1067 West Frank street with a family by the name of Block, and that he was partner with a man by the name of Cooper, living at the same address, in the business of peddling potatoes; that on the morning of the alleged robbery he got up at six o'clock and went on his route peddling potatoes from Union avenue around Twenty-sixth street, on Twenty-sixth street from Halsted to Racine, then around Fifty-fifth street and Fifty-eighth street, and returned from his work about 6:30 in the evening. He stated that he knew Yonkowski before the robbery, and

that on March 10, 1922, (the day he was arrested,) he met Yonkowski and two other men whom he did not know but since learned were Shyne and Lubin; that Yonkowski asked him to take him and Shyne and Lubin for a ride, and that while they were joy-riding they were arrested. He denied knowing anything about the guns that were found on the back seat of the automobile in which they were riding.

Two witnesses, Mrs. Rose Cooper, the wife of defendant's partner in the potato business, and Louis Block, testified that the defendant maintained a good reputation for honesty, etc., in the neighborhood in which he lived. Mrs. Cooper also testified that she knew defendant was peddling potatoes during the week before Christmas, 1921, and that she saw the wagon go out every morning during that week, and that every night defendant brought home the money and settled with her husband, who was sick and unable to help him. Block testified that he lived in the same house where defendant lived, and recalled having seen him either in front of that house, or inside eating breakfast, on the morning of the day of the robbery, about 6:30.

The two alibi witnesses for the defense did not account for the whereabouts of the defendant at the time of the robbery. Their testimony related to a time about three hours earlier than the robbery. The defense on the alibi rested almost solely upon the testimony of the defendant himself. He was contradicted *in toto* by the testimony of Yonkowski, who was an accomplice in the crime committed. The truth of Yonkowski's testimony is strongly supported by the testimony of Diamond that the defendant stated to the police that he was the man that forced Diamond into the toilet on the morning of the robbery. The jury were correctly instructed on the law relating to the testimony of an accomplice, and in the absence of substantial error in the record the verdict of the jury must be sustained.

Where an alibi is relied on as a defense, in order to maintain it it is incumbent on the defendant to support it

by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against him. The defendant complains of an instruction by the court that directed the jury that the burden of establishing the defense of an alibi is on the defendant, and to maintain it it is incumbent upon him to prove facts and circumstances which, when considered in connection with all the evidence relied on to establish his guilt of the crime charged, are sufficient to create in the minds of the jury a reasonable doubt of the truth of the charge. The instruction closed with the further direction that if the evidence introduced in the case to maintain the defense of an alibi, when considered with all the evidence relied upon to establish defendant's guilt of the crime charged, is not sufficient to create in the minds of the jury a reasonable doubt of the truth of the charge, then that defense is not available to the defendant. This instruction is not strictly accurate. The burden of proof in a criminal case never shifts to the defendant; and this is true whether the defense is an alibi, or insanity, or other defense of a positive character. The defense as to an alibi and the character of proof required are correctly stated by us in the first part of this paragraph, but, so far as this point is concerned, the jury could not have been misled by the instruction, because they were clearly informed that the evidence for the defendant was only required to raise a reasonable doubt as to the truth of the charge.

The real, substantial objection made by the defendant to the above instruction is that it confines the consideration of the jury to the proof of the alibi and all the evidence relied upon to establish the guilt of the defendant, and then tells the jury that if on such consideration they find the evidence not sufficient to create a reasonable doubt of the truth of the charge, then that defense is not available to the defendant. The law is that the jury shall consider all

the evidence introduced bearing upon the defense of an alibi and shall also consider all other evidence in the case, and if after such consideration there arises a reasonable doubt in the minds of the jury as to the defendant's guilt he should be acquitted. No part of the defendant's evidence should be omitted from this consideration. He had a right to have his evidence of good character considered. There were a number of instructions given to the jury that stated the law correctly and accurately to the jury.

The defendant also asked the court to give instructions to the jury that contained the same inaccuracies as the instructions concerning which the defendant makes complaint. In one of these instructions the jury were told that it was not necessary for the defense to prove the alibi beyond a reasonable doubt, but that it was sufficient if the evidence introduced in support of the alibi raised in the minds of the jury a reasonable doubt as to where he was on the day in question. By this instruction he also confined his defense solely to the evidence bearing on the alibi, and in addition to that had the jury erroneously instructed that if they entertained a doubt of his whereabouts on that day after a consideration of such evidence it was their duty to return a verdict of not guilty. The reasonable doubt which the jury should entertain in any case is as to defendant's guilt where the defense is an alibi, and not as to his whereabouts at the time the crime was committed. (*Carlton* v. *People,* 150 Ill. 181.) It is also the law that if such reasonable doubt arises from a consideration of all the evidence the defendant should be acquitted. But a defendant cannot successfully complain of error in instructions when the same error, in substance, is contained in instructions offered by him and given by the court.

Defendant makes the objection that the court erroneously allowed the witness Yonkowski to detail to the jury what he stated before the court after he had been convicted in another case for robbery. This evidence was very objec-

tionable, and it was particularly objectionable for the State's counsel to ask the witness to state, in substance, that he there wanted to tell the truth concerning the facts in this case and that he told the judge that he wanted to tell the truth. The declarations were simply mere unsworn declarations of the witness out of the presence of the defendant and were not competent at all, and it was an unlawful attempt by the State to give undue weight to such declarations and his testimony by having the witness state that he told the judge that he wanted to tell the truth and that he did tell the truth. The fact that Yonkowski was convicted of robbery in the other case was a fact that the jury in this case could consider as affecting the credibility of the witness, and the State apparently sought to have the jury believe that the witness should be considered as telling the truth merely because he told the judge in open court, in another case and after he was convicted, that he wanted to tell the truth, and that he did tell the truth at that time. Any declaration that he made to the court on that occasion was not competent evidence at all against this defendant. The defendant, however, is not in a position to complain of such testimony, as he made no objection to it whatever.

There are other objections by defendant to declarations of witnesses made outside of court and introduced in evidence in this case, to which objection was made by defendant and the court promptly sustained the objection. The witnesses afterwards testified to the same declarations without any further objection by the defendant, and for the same reason he has no cause of complaint here. A defendant must make timely objection or move to exclude improper evidence before he can complain of its introduction.

There was no error in admitting the testimony of Mrs. Perske, to the effect that her son, a co-defendant, brought home with him one of the fur pieces that was taken from Diamond's store by the robbery aforesaid. He was one of the conspirators to rob and one of the robbers, as estab-

lished by the evidence, and the fur piece carried away by him was properly admitted in evidence as an exhibit,—just as properly so as any of the other articles stolen,—and it was proper to show where it came from when found by the police.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*