(No. 20504.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IRVING JONICEK *et al.* Plaintiffs in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 6, 1931.*

WM. SCOTT STEWART, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOHN P. MADDEN, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

The plaintiffs in error, Irving Jonicek and Charles Meminger, (herein called the defendants,) were convicted in the criminal court of Cook county of robbery with a gun, and the case is now here for review upon a writ of error.

On Sunday, April 27, 1930, at about 7:00 P. M., the complaining witness, Jacob Vitz, was driving his automobile west on Washington boulevard, in Chicago. He was alone, and when stopped by a traffic signal two men, whom he afterwards identified as the defendants, entered his machine. One took out a revolver and compelled him to drive to a dark street. There he was searched and they took about $500 in cash and jewelry from him. The car was driven to a lonely spot and Vitz was compelled to get out aud walk home. The two men drove away in his car and it was found abandoned three days later. Ten days after the robbery, at the detective bureau, Vitz picked out the two defendants as the men who had robbed him from among a group of police suspects, although they then wore clothes different from those worn at the time of the hold-up. At the trial Vitz also identified the two defendants as the men who had robbed him, saying that it was too dark for the attention of others to be attracted to what was going on in his car. When Vitz recognized the men among the prisoners he spoke to the officer about Jonicek then having on a brown hat although he had a light-colored hat on at the

time of the robbery. The police raided Jonicek's living quarters and found a light-colored hat which fitted Jonicek. Two police officers testified concerning the arrest and to the fact that complaining witness made the identification of the defendants at the detective bureau.

The defendants testified denying participation in the robbery and produced witnesses in support of an alibi. The alibi set up by Jonicek was supported by the testimony of his relatives, and that of the defendant Meminger was supported by the testimony of the father and mother of his sweetheart.

The defendants ask that the judgment of the court below be reversed because improper evidence was admitted and because the court improperly instructed the jury. In support of their first contention the defendants complain of the conduct of the State's attorney in examining one of the police officers concerning the "show up" at the detective bureau. The State's attorney asked the witness to tell the court and jury how the show-up was conducted, and the officer answered that all the prisoners from outlying stations and the detective bureau are brought in who "have committed crimes and have records." After the question was answered an objection was made by the defendants' attorney that it was improper, and the court sustained the objection. The defendants contend that the mere sustaining of the objection did not remove the prejudice created against the defendants, and that later in the trial the State's attorney again asked another police officer if he knew the defendants and how long had he known them. The officer was permitted to answer the question, and the defendants contend that the harm by such a question is that it might indicate to the jury that the defendants must be police characters if a police officer had previously known them. The questions asked by the State's attorney in the two instances above related were not prejudicial to the defendants. It was the answer of the police officer rather than

the question by the State's attorney to which the defendants' attorney objected in the first instance, and the court sustained the objection. In the second instance the question asked contained no improper suggestion that the police officer knew the defendants from having arrested them or either of them. The fact that a police officer may have known one of the defendants for three weeks is not in itself any proof of a police record, as police officers must have many friends who are respectable citizens without police records.

Objection is also made to a question asked of a witness for the defendant Jonicek if she had ever testified for her brother-in-law before. It is alleged that such a question carried with it an intimation that the defendant had been tried on some previous occasion. This question was answered by the witness before it was objected to, and the court committed no error in allowing the answer to stand. It was shown at the trial that the defendants had a hearing in the municipal court before being held to the grand jury. Although they both waived examination, as they had a right to do, it is not unusual for witnesses to testify at such preliminary hearings for persons charged with crime, and the question seems neither unusual nor prejudicial. These objections were all based on the assumption that the asking of the questions served to prejudice the defendants before the jury—an assumption not justified by the questions asked or the manner of asking them. The conduct of the State's attorney in the present case was not objectionable, as the record does not show that he pursued any improper line of inquiry or persisted in asking questions previously forbidden by the court.

In this respect the facts in the present case easily distinguish it from the cases cited by the defendants, where convictions have been reversed under altogether different circumstances. For instance, in *People* v. *Lehner*, 326 Ill. 216, the State's attorney, in spite of adverse rulings by the

court, repeatedly asked similar questions in an attempt to show the defendant's arrest for other crimes. Likewise in *People* v. *Celmars,* 332 Ill. 113, the State's attorney, after the court had sustained objections to a former like inquiry, persisted in asking a witness if he knew the defendant had been in the reformatory. In another case cited by the defendants (*People* v. *Geidras,* 338 Ill. 340,) the prosecutor wrongly cross-examined the defendant at length for the purpose of implicating him with other robberies. The grounds for reversal found in these and other cases cited on the same point by the defendants do not exist in the case at bar.

Objections are also made to the ruling of the trial court in allowing evidence to stand which showed that the defendants waived preliminary examination, on the ground that the defendants' waiver of that right could not have been shown without prejudice. An examination of the record shows that the attorney then representing the defendants inquired in detail about what happened in the so-called "felony court," and on cross-examination of officer Boedeker asked, "You didn't hear me ask any questions at all?" to which the officer answered, "No." After the defendants went into the happenings in the preliminary hearing before the felony court, we can see no prejudicial harm in the officer's testimony for the State that the defendants had waived examination. In answer to the objection made during the trial by the defendants' attorney to the question of waiving examination the attorney for the State said, "You brought it out," and the record verifies this statement.

The defendants complain that the jury were improperly instructed, and first object to instruction No. 7, (an instruction on alibi,) which told the jury that where the defendants rely upon alibi as a defense they must support it by facts and circumstances which, when considered in connection with all the other evidence in the case, are sufficient to create in the minds of the jury a reasonable doubt. The defendants cite no authority condemning this instruc-

tion, while, on the other hand, it has been upheld in *People v. Robinson,* 308 Ill. 398.

The defendants further urge that since instruction No. 7 was given, the court should also have given the defendants' instructions Nos. 24, 25 and 26, all concerning the defense of an alibi. Instruction No. 24 defined alibi as a legal defense and was sufficiently covered by People's instruction No. 14 on the same subject. Instruction No. 25 told the jury that it was not necessary for the defendants to prove their alibi beyond a reasonable doubt, and if, after hearing the evidence in the case, the jury cannot say they are convinced, beyond a reasonable doubt, as to where the defendants were on the day in question, then it is their duty to return a verdict of not guilty. Instruction No. 26 instructs the jury that the burden of proof is not changed when the defendants, or either of them, undertake to prove an alibi, and if from the evidence in relation to such alibi the jury should entertain a reasonable doubt as to the guilt of the defendants, or either of them, they or either of them should be acquitted although the jury should not be able to find that the alibi was fully proved. The contents of these two last instructions were fully covered by instructions Nos. 13 and 14 given by the court at the request of the defendants, No. 13 fully stating the law as regards burden of proof and reasonable doubt of guilt and No. 14 relating to proof of an alibi. The court's refusal to give instructions Nos. 24, 25 and 26 was not prejudicial to the defendants.

The defendants next object to instruction No. 6, which told the jury that the conclusion as to the defendants' guilt or innocence would not necessarily depend upon the number of witnesses testifying to a particular fact or state of facts, and that the jury might take into consideration the opportunities of the several witnesses for knowing things they testified to, etc. It is objected that in the light of the evidence this instruction is prejudicial to the defendants, since their guilt was testified to by only one witness while

that of the alibi was testified to by a number of witnesses. The record shows that three witnesses testified for the State instead of one, and the jury are to consider all of the evidence offered at the trial in arriving at their verdict. The testimony of the complaining witness was supplemented by that of the police officers, especially with reference to the means in identifying the defendants, and thus the grounds for this objection are unfounded in fact. No authority is cited against this instruction, and it is one commonly given in criminal trials and was properly given in this case.

Instruction No. 4 complained of by the defendants told the jury that one accused of crime might testify in his own behalf, and that when so testifying he becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are applied to other witnesses, etc. This instruction has been frequently upheld, (*People* v. *Maciejewski,* 294 Ill. 390; *People* v. *Flanagan,* 338 id. 353;) and it was supplemented by instruction No. 3, which applied to all the witnesses in the case, and distinguished this case from the case of *People* v. *Washington,* 327 Ill. 152, cited by the defendants.

The defendants also object to the giving of instructions Nos. 1, 5 and 9 on behalf of the People. No. 1 directs the jury to consider the instructions together as one entire series; No. 5 states that if the jury believe any witness has willfully and corruptly sworn falsely as to any material fact in the case the jury may disregard the entire testimony of such witness except so far as such testimony has been corroborated by other credible evidence, and No. 9 states that if the jury, after considering all the evidence in the case, are morally certain that the guilt of the defendants has been proved beyond a reasonable doubt and to a moral certainty, then it is the duty of the jury to find the defendants guilty. The objections to these three instructions are trivial and without merit, and no language was used in any of them which has heretofore been con-

demned by this court or which may be said to have prejudiced the defendants in any way.

There is no reversible error in the record and no reason has been shown why this court should disturb the verdict of the jury finding the defendants guilty. So far as the record shows, they had a fair and impartial trial.

The judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*