(No. 40283.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* DONALD F. UNDERHILL, Appellant.

*Opinion filed Sept. 29, 1967.—Rehearing denied Nov. 27, 1967.*

STARKE, ANGLIN, SAVAGE, FRAZIN, STEWART & MAY, of Chicago, (HOWARD T. SAVAGE, of counsel,) for appellant.

WILLIAM R. KETCHAM, State's Attorney, of Elgin, (W. BEN MORGAN, Assistant State's Attorney, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Donald F. Underhill, was convicted of

burglary in the circuit court of Kane County and sentenced to the penitentiary for a term of not less than 2 nor more than 12 years. He appeals from this conviction, contending that his confession was obtained by constitutionally impermissible means, that he was not proved guilty beyond a reasonable doubt, and that his counsel at trial was incompetent. He further contends that certain evidence and exhibits were improperly admitted, that certain instructions were erroneously given, and that certain remarks in the State's closing argument were inflammatory and constituted reversible error.

The record discloses that a safe and its contents were taken some time between the evening of December 11 and about 9:30 A.M. December 12 from the locked premises of the Manor Coffee Shop in Elgin, where defendant's wife, Linda, was employed as a waitress. The three doors, windows and skylight of the shop bore no signs of forcible entry, and all keys to the premises were entrusted to persons other than defendant's wife. The day following the burglary Linda Underhill worked only two hours of her normal shift and left claiming illness and did not return to work thereafter.

On January 11, 1966, Elgin police officers found the remnants of what was once a safe on the shoulder of Spaulding Road, east of Griffin Road, in Cook County. On January 16, 1966, at about 7:00 P.M., defendant and his wife were picked up by Elgin police while driving a motor vehicle in the city of Elgin. They were taken to the police station, placed in separate cells, and booked for deceptive practices in connection with an investigation of some forgeries they were suspected of having committed. Defendant was also charged with driving without a license.

While incarcerated, defendant and his wife were separately questioned about the above burglary. On the morning of January 17, 1966, at about 9:30 or 10:30, defendant allegedly made an oral confession admitting his participation

in the burglary, and his wife did likewise around 2:00 that afternoon. Thereafter, when defendant was asked to sign a written statement, he requested permission to call his attorney, which was granted. Upon being unable to reach his attorney defendant did not sign any statement. A preliminary hearing was held on March 29, 1966, and on April 4, 1966, defendant and his wife were indicted for burglary.

On May 9, 1966, defendant and his co-defendant wife, represented by private counsel, moved to suppress their oral confessions on the basis of involuntariness, charging that they were induced by promises of leniency and threats of other prosecutions against her. At the hearing on that motion the promises of leniency or threats were controverted by the interrogating police officers who did admit, however, to having a discussion with defendant concerning the possibility of probation for his wife, wherein they indicated they would not oppose such probation. But the officers emphatically denied promising defendant leniency for his wife, with regard to a prosecution for forgery, if he confessed to the burglary. Although defendant and his wife repudiated their confessions, the court denied their motion to suppress as to both confessions.

Defendant and his wife were tried jointly in a jury trial commencing May 10, 1966. The principal witnesses for the State were the police officers who testified that, among other things, defendant admitted burglarizing the coffee shop by use of a duplicate key obtained through his wife's assistance, opening the safe taken therefrom in his basement with a crowbar and screwdrivers, and dumping the dismantled safe out on Spaulding Road. They further testified that defendant's wife, outside defendant's presence, admitted abetting the burglary by taking the back door key of the shop, giving it to her husband, and returning it after he made a duplicate thereof. The officers, at the trial, again denied making any promises of leniency regarding defendant's wife, stating that they only told defendant, in response to an inquiry by

him, that they would not oppose probation for her. The State then introduced into evidence the following six exhibits: (1) two keys, one of which the owner of the Manor Coffee Shop testified opened the back door to his shop at the date of the burglary, (2) the key taken from the person of the defendant at the time of his arrest which he allegedly admitted using to gain entrance to the shop and which, when tested subsequent to the burglary, fit the lock on the back door but did not open it, (3) five pieces of metal, which once constituted a safe, and which defendant allegedly identified as the safe he removed from the coffee shop, and (4) (5) and (6) a crowbar and two screwdrivers taken, at defendant's direction, from his home and automobile, respectively, which he allegedly admitted were used to open the safe and which the prosecution's expert witness from the crime laboratory indicated could have been the tools used to dismantle the safe, and that paint pigment found on the crowbar was the same as paint pigment on the safe.

Defendant and his wife each took the stand in their own behalf and denied participating in the burglary, specifically repudiating their confessions, and introduced an alibi corroborated in part by defendant's stepfather. During defendant's direct testimony he admitted that he had twice before been convicted of burglary and had previously been arrested for assaulting his father-in-law.

The State's Attorney, in his closing argument, suggested that the reason exhibit (2) did not open the back door of the coffee shop was that the locks were changed after the burglary, although there was no direct evidence introduced at trial of any change of locks. (In his direct examination of the owner of the coffee shop, the State's Attorney sought to elicit information concerning a change in locks subsequent to the burglary, but defense counsel's objection to this line of inquiry was sustained by the trial court.) Defense counsel objected, and the court instructed the jury to disregard any remark unsupported by the evidence. The prose-

cution also argued that defendant's previous convictions reflected on his credibility, and enumerated the two burglary convictions and referred to "* * * one other incident * * *" he did not recall at the time. Defendant's objection to the "other incident" without specification was sustained. Thereafter, defendants were found guilty of the crime charged, from which conviction he prosecutes this appeal.

In support of his contention that the above confessions should have been suppressed, defendant argues that they were obtained through coercion and inducement, as evidenced in part by the failure to bring him promptly before a judicial officer in accordance with section 109—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 109—1), and that he and his wife were interrogated without the benefit of the procedural safeguards to their constitutional rights set forth in *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694.

The trial court determined these questions by a preliminary hearing and found that the confessions were voluntary. On review such determination will not be disturbed unless manifestly against the weight of the evidence, or unless the court has committed an abuse of discretion. (*People* v. *Ackerson*, 37 Ill.2d 117; *People* v. *Spencer*, 27 Ill.2d 320.) At the preliminary hearing, defendant testified that he was held *incommunicado* for approximately 15 hours after his arrest and not allowed to call his lawyer, and that if he made any confession it was induced by the promise of leniency for his wife. Defendant's wife testified that she also was held *incommunicado* for about 15 hours after her arrest, and that the police threatened to prosecute her for adultery if she did not confess. Both defendants then repudiated that they had made confessions or admissions. The police officers in question denied making any threats or promises of leniency, and stated, with regard to their discussion with defendant concerning probation for his wife, that they had merely informed him they would

not oppose such probation while pointing out that it was not their prerogative to grant probation. They further stated that defendant was never denied the opportunity to call his lawyer and that he in fact was allowed to do so but that the attorney could not be reached.

The evidence at this hearing was contradictory and while the record does indicate that the defendants were not promptly presented before a magistrate as required by section 109—1 of the Code of Criminal Procedure, such delay did not of itself vitiate the confessions but was merely a factor to be considered on the question of the voluntariness of the confessions. (*People* v. *Harper,* 36 Ill.2d 398.) There is substantial evidence in the record to support the trial court's finding of the voluntariness and we will not disturb it on review. We note that the standards laid down in *Miranda* are not applicable here since defendant was tried before the date of their prospective application, June 13, 1966, (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882), and fundamental fairness does not require their application to this case. *People* v. *McGuire,* 35 Ill.2d 219.

Defendant's argument with respect to the admissibility of the State's exhibits is a corollary to his initial contention that his confession was inadmissible. Since we have decided that issue in favor of the confession's admissibility, it follows that the admission of exhibits (2) through (6) was proper since the confession establishes their relevance to this prosecution. It further follows that exhibit (1) was properly admitted for the sake of comparison with exhibit (2) to establish if the latter exhibit could have opened a door to the shop at the date of the burglary. Its admission was especially necessary since the record indicates that perhaps the locks on the shop had been changed subsequent to the burglary and the trial court had improperly precluded the State from eliciting this information.

Defendant next maintains that "It is the law of this State that the voluntary confession of one person made

after the commission of the crime cannot be admitted against a codefendant unless made in the presence of the codefendant and assented to by him" (*People* v. *Hodson*, 406 Ill. 328, 334), and that therefore it was error for the court to admit his wife's confession without giving a cautionary instruction to the jury that the confession should be considered only as to the wife's guilt.

Defense counsel was apprised of the nature of the wife's confession at the preliminary hearing on the motion to suppress. At no time, including his post-trial motion, did he make a request for a separate trial or object to the admission of the wife's confession. Nor did he ask for or submit a cautionary instruction concerning the proper purpose of that confession. Therefore, defendant may not under the circumstances challenge the admissibility of the confession without a limiting instruction since, as held in *People* v. *Bartz*, 342 Ill. 56, 64, "A defendant must make a timely objection to the introduction of a confession on a specific ground or he is not in a position to complain of its admission in evidence upon a review of the case. (*People* v. *Robinson*, 308 Ill. 398; *People* v. *Bopp*, 285 Ill. 396, p. 408; *McCann* v. *People*, 226 Ill. 562; *O'Donnell* v. *People*, 224 Ill. 218.) It is not the duty of the trial court to instruct the jury that a confession, when admitted, may be considered only as against its author, unless the co-defendant desiring such an instruction, requests it."

Defendant also maintains that certain remarks of the prosecution in its final argument were inflammatory, that certain instructions were improper, and that both these remarks and instructions constitute reversible error. While, in his brief, defendant enumerates several allegedly improper statements, we need consider only those remarks objected to at trial since statements not objected to are waived. (*People* v. *Donald*, 29 Ill.2d 283.) As previously mentioned, those remarks were the prosecution's suggestion that the

locks on the shop had been changed subsequent to the burglary, and its comment that defendant had committed, in addition to his two prior convictions for burglary, "one other offense". Defendant's objections to both remarks were sustained and the jury instructed to disregard any statement not supported by the evidence. Moreover, with regard to the latter remark, the record reveals that defendant himself, on direct examination, admitted his prior arrest for assault, thereby vitiating the impropriety of the remark. We therefore find that the court's admonishment was sufficient to correct any prejudicial effect produced by the prosecution's statements. We further find that defendant's contention with respect to certain instructions is spurious and that these instructions were properly given.

We next consider defendant's interrelated contentions that the State failed to prove the *corpus delicti* of the crime of burglary, since his confession is not competent evidence of same, and that he was not proved guilty beyond a reasonable doubt since his conviction was based solely on his and his wife's uncorroborated extra-judicial confessions.

It was incumbent upon the State to show an unauthorized entry into the Manor Coffee Shop with the intent to commit a felony or theft therein. (See Ill. Rev. Stat. 1965, chap. 38, par. 19—1.) It is clear that the unauthorized entry may be proved by circumstantial evidence, and that the accompanying intent to commit an offense may be inferred from the fact that a larceny was actually committed. (*People* v. *Franceschini*, 20 Ill.2d 126.) It is also clear, contrary to defendant's argument, that a voluntary confession may be considered along with other evidence to establish the *corpus delicti*. (*People* v. *Melquist*, 26 Ill.2d 22; *People* v. *Lueder*, 3 Ill.2d 487.) From an examination of all the evidence in the case, it is our judgment that the State not only proved the *corpus delicti* of the burglary but established defendant's criminal liability for the burglary

beyond a reasonable doubt. The police testified concerning defendant's confession to the crime and the details he recited thereof. These details were corroborated by circumstantial evidence and the inference arising therefrom. For example, there was no sign that the coffee shop had been forcibly entered, thereby suggesting the use of a key. The safe and the tools defendant claimed he opened it with were found at the places indicated by him. Although defendant claimed an alibi, corroborated by his wife and stepfather, this was merely one fact before the jury. There was substantial competent evidence to sustain the jury's finding of guilty. We will not substitute our judgment for that of the trier of facts where the evidence is merely contradictory, including situations where an alibi is offered on behalf of the accused.

Finally, defendant complains that his counsel at trial was incompetent, thereby denying him his rights to counsel and due process of law guaranteed under the Federal and State constitutions. He particularly charges that the following series of omissions by trial counsel evidence an incompetent representation: the failure to suppress the confession of defendant's wife in that it was made outside defendant's presence, the failure to object to the testimony of his wife's confession and move to strike it, the failure to ask for a separate trial because of his wife's confession, the failure to tender a cautionary instruction to the jury and the failure to object to certain remarks of the prosecution in its final argument. However, in this case the defendant is represented by counsel of his own choice and "the court has held, almost without exception, that the failure of such counsel to exercise care and skill in the trial of the case does not afford a basis for reversing a judgment of conviction." (*People* v. *Morris,* 3 Ill.2d 437, 444.) From an examination of the record, we cannot say that defendant's representation was so inadequate as to violate the standards laid down for private counsel. Therefore, defendant must in this

case bear the consequences of his chosen attorney's representation.

For the reasons stated above, the decision of the circuit court of Kane County is affirmed.

*Judgment affirmed.*