(No. 41385.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JOSEPH R. HURST, Appellant.

*Opinion filed March 27, 1969.*

218

SCHAEFER, J., dissenting.

WAYNE W. WHALEN, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, ELMER C. KISSANE and JAMES KAVANAUGH, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:
Defendant, Joseph R. Hurst, was indicted for murder, attempted murder, aggravated battery and resisting arrest. He pleaded not guilty, waived trial by jury and was found guilty of the murder of Herman Stallworth and was sentenced to death by electrocution. His motion for a new trial was denied and he now appeals to this court alleging various constitutional and procedural errors.

On May 23, 1967, defendant and a passenger, Charles Harper, were stopped by Officers Ervin and Stallworth of the Chicago Police Department for speeding. Ervin testified that after stopping the defendant he walked over to his vehicle and asked to see the defendant's driver's license. The defendant stated that he had none. At this time Stallworth

made a brief search of the car, and then the defendant and his passenger were taken to the squad car where Ervin stepped into the car to use the police radio. He had the microphone in his left hand and a ticket in his right hand at which he was looking when he heard the defendant say, "No". He then heard two gun shots, looked up and saw a flash.

The defendant testified that upon being stopped, Stallworth approached his car and asked him for his driver's license. When he stated that he had none, Stallworth grabbed him and pulled him from the car. He further stated that his passenger Harper went to the squad car with Ervin and that he and Stallworth walked over to the grass part of the street on the other side of the police car. While there, Stallworth asked him how much money he had, and he replied that he had none and that he was going to report Stallworth to the Chief of Police for attempted bribery. Stallworth then threatened to kill the defendant and struck him across the head before reaching for his gun. The defendant immediately reached for his own gun and fatally shot Stallworth. He further stated that after he was struck he was acting instinctively like a wounded animal. He looked toward the squad car, saw Officer Ervin drawing his pistol and shot him through the windshield of the squad car. He then turned and ran to a hotel a short distance away with other police in pursuit.

Defendant was observed by the first policeman on the scene running northeast towards Maryland Street. The police chased the defendant without losing sight of him for approximately one and one-half blocks to a building where he ran up a flight of stairs and into a wash room in a hallway. The officers arrived at the hallway wash room and announced their office. The defendant replied, "I have six more—come and get me." He then fired a shot through the wash room door at the officers who again ordered the de-

fendant to come out. Upon discovering that his gun was empty the defendant threw it into the hallway and was taken into custody.

Defendant contends that the State failed to sustain its burden of proving beyond a reasonable doubt that he was not acting in self-defense when he shot Stallworth and Ervin. Defendant's theory of self-defense is based upon his own testimony at the trial that he was threatened and struck across the head by Stallworth just before the officer reached for his gun. He stated that after shooting Stallworth he was again placed in fear of losing his life upon seeing Ervin reach for his gun. Nora Wilson, an eyewitness, testified that Stallworth looked as though he was about to search the defendant when the shooting took place. The defendant himself testified at trial that he could only see Ervin's head and shoulders as he sat in the police car talking into the microphone. There was evidence that defendant received a cut on his head during the evening of his arrest, but there was no testimony other than his own that the cut was inflicted when Stallworth struck him. The officers present testified that he resisted arrest, and the defendant himself stated that he was beaten at the time of apprehension.

Even taking the defendant's testimony in its most favorable aspect it is difficult to understand how he could determine that he was using force likely to cause death in self-defense under a reasonable belief that such force was necessary to prevent his own death. A person being arrested by police in uniform has no right to shoot and kill arresting officers under the circumstances and evidence of this case.

There is no doubt that the evidence was conflicting and at times confusing, however, it is the function of the trial court to resolve the conflicts and determine the credibility of the statements given by the witnesses involved. We will not disturb the court's finding in this case that the defendant did not act in self-defense. *People v. Pelegri,* 39 Ill.2d 568.

The defendant next contends that even if this court

should find that the defendant was not acting in self-defense, the record shows that the conviction should be reduced to voluntary manslaughter since the defendant was seriously provoked by Stallworth and believed he was acting in self-defense. Voluntary manslaughter is defined by statute as a killing without lawful justification by someone who is acting under a sudden and intense passion resulting from serious provocation. The defendant testified that Stallworth had struck him and opened a head wound, had attempted to shake him down and had threatened his life while reaching for his gun. Again, as with the self-defense issue, it is the defendant's own testimony with which he attempts to establish the element of provocation. This testimony was inconsistent and conflicting and apparently disbelieved by the trial court. When such evidence is presented, it is the province of the trier of fact, whether it be court or jury, to determine whether provocation in fact existed sufficient to reduce a conviction of murder to manslaughter. Again, the record does not justify our substituting our judgment for that of the trial court. *People* v. *Jordan,* 18 Ill.2d 489.

The defendant asks us to judge the effectiveness and competency of the counsel which he employed to present his defense. He claims that he was denied effective assistance of counsel, due process of law and equal protection of the law because his trial attorney was completely unprepared to present his defense, had not investigated the facts so as to familiarize himself with the case, failed to call a material witness, failed to raise the issue of voluntary manslaughter, failed to effectively cross-examine the witnesses presented and attempted to use the defendant's case as a vehicle to foster his theories of psychic science and spiritualism.

Our court has long held that a defendant who chooses his own attorney cannot complain about that attorney's lack of care and skill in handling his case. Since the defendant was represented by counsel of his own choosing, counsel's

alleged failure to exercise care and skill in the trial of his case cannot afford a basis for reversing the judgment rendered. *People* v. *Underhill,* 38 Ill.2d 245.

The defendant contends that he was also denied due process of law at the hearing on aggravation and mitigation. He argues that evidence of prior convictions was introduced which did not show that he had been afforded the right to counsel at the trial which resulted in the conviction, that the prosecutor argued the death sentence should be imposed because the defendant did not plead guilty, that inquiry into the rehabilitation question was limited to the defendant's mental capability and the trial judge failed to give reasons for his decision.

Hearings on aggravation and mitigation are not bound by the strict rules of evidence, and, therefore, an informal presentation of defendant's former record by the prosecution was not erroneous *per se.* (*People* v. *Deweese,* 27 Ill.2d 332.) The statute (Ill. Rev. Stat. 1967, ch. 38, par. 1—7 (g)) provides that the trial court shall hear and receive evidence of the criminal record of the offender and may consider such evidence in aggravation and mitigation. In the *Deweese* case, our court distinguished the offer of records of former convictions at the sentencing hearing from their offer at trial and approved the former. Defendant also argues that the introduction of the above records was improper since they were offered without proof that he was afforded the right to counsel at the prior trial, citing *Burgett* v. *Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258. The *Burgett* case involved the introduction of former records in the indictment and is therefore inapplicable to the facts here.

The State's Attorney, in his closing argument at the hearing in aggravation and mitigation, stated: "Now, maybe, possibly, one might state it is very harsh to inflict the death penalty on a plea of guilty and they might have some basis. The basis and the only basis being that the

individual says, 'Yes, I was wrong; yes, I apologize; yes, I have taken the first step in rehabilitation.' But when he states to the State's Attorney's office of this county, 'Prove me guilty beyond a reasonable doubt,' whether it be in the hands of one man or in the hands of twelve men should make no difference." (R. 391.) Defendant argues that this comment was improper and constitutes reversible error. We do not agree. It is not alleged that a harsher sentence was imposed because the defendant insisted on a trial, nor is there any proof that a heavier penalty was imposed because the defendant refused to acknowledge guilt. The prosecutor, in asking for the death penalty, informed the trial court that it would not be harsh to give such penalty, whereas it might be in a situation where the defendant had entered a plea of guilty, acknowledged his crime and sought rehabilitation. Such a statement does not constitute reversible error.

Defendant next alleges that the trial court erred by failing to expand the aggravation and mitigation proceeding to develop facts as to morality, schooling, family background and other relevant issues. He claims that the trial court ignored the above factors in conducting a narrow inquiry into his mental capacity. This contention does not find support in the record. There was adequate testimony presented by the defendant, his family and friends to provide the information which the hearing is designed to furnish the court in its determination of sentence. *People* v. *Johnson,* 28 Ill.2d 531.

Defendant argues that that decision must be articulated in a form which permits criticism and review and alleges that in this case there is no proof that the judge imposed the death sentence on any reasonable basis. The trial judge pronounced the sentence without apparent deliberation at the conclusion of the hearing in aggravation and mitigation. Defendant argues that a sentence rendered without written reasons cannot stand. There is nothing in the record to sub-

stantiate criticism of the reasonableness and basis for the court's decision and none will be presumed by this court. *People* v. *Rogers,* 26 Ill.2d 599.

Defendant contends that he was denied the right to a trial by a fair jury, due process of law and equal protection of the law when he waived his right to be tried by a jury because his choice was between a bench trial and a trial by a jury where prospective jurors with reservations about capital punishment would have been excluded. He specifically claims that he was faced with the prospect of an unconstitutionally empaneled jury and, therefore, his waiver of trial by such a jury was involuntary as a matter of law. We cannot agree with defendant's assumption that if a jury had been empaneled it would have been empaneled in an unconstitutional manner in violation of *Witherspoon* v. *Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. Before waiving trial by jury, the defendant talked to his counsel during a recess, signed a jury waiver and then another recess was taken to discuss the waiver with the defendant's family. The trial judge gave the defendant until the following day to reconsider the waiver. The next day the defendant indicated he did not desire a jury trial and that he understood it was his absolute constitutional right to be tried by a jury if he so desired. Defendant stated that he had been advised of the consequences of waiving a jury trial and of the possible results if he were found guilty. We are of the opinion that under the above facts defendant was not denied a fair jury trial and that more than adequate admonishment of his rights took place. *People* v. *Benjamin,* 34 Ill.2d 183.

Defendant lastly contends that a sentence to death in the electric chair violates the eighth amendment to the constitution in that it constitutes cruel and unusual punishment. This argument has been previously rejected by our court since the constitutional provision is aimed at the form of the punishment rather than its severity. (*People* v. *Chesnas,*

325 Ill. 361.) Section 9—1 of the Criminal Code of 1961, (Ill. Rev. Stat. 1967, ch. 38, par. 9—1), provides that a person convicted of murder shall be punished by death or imprisonment. Where death is the punishment to be administered, the constitution is not violated as long as such is inflicted speedily and without undue pain or torture. The sentence imposed upon the defendant was within the prescribed limits and will not be disturbed on review by this court. *People* v. *Calcaterra,* 33 Ill.2d 541.

The judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order fixing Friday, May 30, 1969, as the date on which the original sentence of death entered in the circuit court shall be executed. A certified copy of this order shall be furnished by the clerk of this court to the sheriff of Cook County.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

I am unable to agree with the following statements in the opinion of the court: "Our court has long held that a defendant who chooses his own attorney cannot complain about that attorney's lack of care and skill in handling his case. Since the defendant was represented by counsel of his own choosing, counsel's alleged failure to exercise care and skill in the trial of his case cannot afford a basis for reversing the judgment rendered. *People* v. *Underhill,* 38 Ill.2d 245."

In *People* v. *Underhill,* upon which the opinion relies, the court did not automatically refuse to examine the claim of incompetent representation by retained counsel. On the contrary, the court there concluded: "From an examination of the record, we cannot say that defendant's representation was so inadequate as to violate the standards laid down for private counsel." 38 Ill.2d, at 254.

The rule that has heretofore been applied by this court was stated in *People* v. *Pride,* 16 Ill.2d 82, 94: "We have

held that where a defendant in a criminal case employs counsel of his own choice, his judgment of conviction will not be reversed merely because his counsel failed to exercise the greatest skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder. (*People* v. *Stephens,* 6 Ill.2d 257; *People* v. *Ney,* 349 Ill. 172.) When the representation of the defendant, however, is of such low caliber as to amount to no representation and reduces the trial to a farce, this court will reverse a conviction because the defendant, under these circumstances, has been deprived of his constitutional right to a fair trial. *People* v. *De Simone,* 9 Ill.2d 522; *People* v. *Morris,* 3 Ill.2d 437."

When a question of the competence of retained counsel has been raised, it has been the practice of this court to determine that question upon an examination of the entire record. See, *e.g.,* *People* v. *Duncan,* 32 Ill.2d 322; *People* v. *Palmer,* 27 Ill.2d 311; *People* v. *Strader,* 23 Ill.2d 13; *People* v. *Pride,* 16 Ill.2d 82; *People* v. *Clark,* 9 Ill.2d 46; *People* v. *Clark,* 7 Ill.2d 163; *People* v. *Stephens,* 6 Ill.2d 257.

To erect an insurmountable barrier which precludes all inquiry as to the competence of the representation of a defendant in a criminal case solely upon the ground that he was represented by retained counsel is unwise, in my opinion, even apart from the serious constitutional question it raises.