**UNITED STATES of America**

v.

**Herbert W. APPELL.**

**Crim. No. 65–322–C.**

United States District Court
D. Massachusetts.

Oct. 7, 1966.

Paul F. Markham, U. S. Atty., John Wall, Asst. U. S. Atty., for plaintiff.

George R. Desmond, Framingham, Mass., for defendant.

## OPINION

CAFFREY, District Judge.

This matter came before the Court on a motion to suppress the use of certain property as evidence which defendant contends was unlawfully taken from him at the United States Post Office in Southboro, Massachusetts, on August 31, 1965. Defendant also seeks to suppress certain statements made by him to a Post Office Inspector on that occasion.

After hearing, I find that on August 22, 1965, Post Office Inspector Walter J. Zygmunt went to the John Hancock Mutual Life Insurance Company office in connection with that company's receipt through the mails of what it believed to be a fictitious request for payment in the name of one Howard K. Hill. Inspector Zygmunt was told by a representative of the insurance company that they were going to mail a letter replying to this request to 366 Pond Street, Franklin, Massachusetts. The inspector then went to the Franklin Post Office where he met an investigator from the insurance company, who gave him the details surrounding the company's investigation of what it believed to be a false claim. The insurance company had detected what appeared to be the same typing on the Howard K. Hill claim as that contained on a claim which the company had paid approximately one month earlier. Investigation by Inspector Zygmunt determined that the return address given by the person using the name Howard K. Hill was in fact that of an empty house. He also found a change-of-address card from the 366 Pond Street, Franklin address to Box 129, Southboro. He next determined that Box 129 in Southboro had been rented to an individual using

the name George Hill. Later, Inspector Zygmunt returned to the insurance company office and was advised that the company was in receipt of a claim in the name of a "Mr. Dorn" and that a change-of-address card had been filed re-routing "Dorn's" mail to Box 129, Southboro. The inspector observed an employee of the John Hancock Mutual Life Insurance Company place a check in the amount of $899.01 in an envelope addressed to Dorn at Box 129, Southboro. On Monday, August 30, 1965, Zygmunt went to the Southboro Post Office and observed a clerk place two envelopes in Box 129. One of these envelopes was addressed to Robert A. Dorn and the other to Howard K. Hill. The original address on both envelopes had been deleted and Box 129, Southboro, had been added as a forwarding address. Zygmunt maintained a vigil all day Monday but no one appeared to claim these letters. He resumed his vigil the following day, Tuesday, August 31, at about 7:30 a. m., standing about 15 feet away from Box 129. At about 7:45 a. m., defendant Appell appeared at the Southboro Post Office, went to Box 129, opened its combination lock and withdrew the contents, the two letters above described plus a partially folded advertising circular from a local supermarket. No one else was in the Post Office lobby near the mail boxes at this time. Zygmunt's position, although approximately 15 feet away from Box 129, was around a corner formed by the glass sidelights of a double door. He could observe Box 129 through the sidelights as well as through the open door. When he observed the defendant riffle through all three pieces of mail, he stepped forward, identified himself as a Post Office Inspector, and requested defendant to turn these pieces of mail over to him.

Defendant contends that he did not see either of the two letters because of the fact that they were folded into the advertising circular. At the hearing he demonstrated the manner in which he says the two envelopes were placed into the advertising circular. His version leaves "1⅜ inches of white envelope protruding above the edge of the brown advertising circular if viewed from one side, or 2½ inches of white envelope protruding above the brown circular if viewed from the other side." He also claimed that the Post Office Inspector seized him, whereas the inspector says that they bumped as defendant straightened up after taking the mail out of a low box, and that the only contact between them consisted of the inspector's placing his hands in front of him to protect himself as defendant straightened up. I believe the testimony of the inspector.

Zygmunt identified himself as a Post Office Inspector and asked Appell to hand him the pieces of mail which he had just taken from the box. Appell handed the mail to the inspector with no comment. Zygmunt then asked Appell to accompany him to a nearby office, where he showed his identification card to Appell and introduced another Post Office Inspector to Appell. Zygmunt testified that he then advised Appell of his right to remain silent and to consult with an attorney, and at the hearing Appell conceded that he was so advised and that he did in fact then call his attorney's office. The attorney had not yet come to the office for the day at the time of the first call to his office.

While waiting for Appell's attorney to arrive at his office, Appell engaged in conversation with Inspector Zygmunt during the course of which he admitted hiring the Post Office box in the name of George Hill. While in the Post Office, the postal clerk who had rented the box to "George Hill" identified Appell as the man who rented the box under that name. Defendant admitted filing an application under his own name to the John Hancock Mutual Life Insurance Company. He declined to initial the envelopes to establish that they were the ones taken from the box that day. Appell then left the Post Office in his own car to make a stop at the John Hancock office where he worked, followed by the inspector in another car, after which Appell and the inspector went to the office of Appell's attorneys.

The inspector waited while Appell consulted with his attorney, who then advised the inspector that Appell would not discuss the matter further and the inspector left.

 At the hearing Appell admitted that he does not own or claim any proprietary interest in the two letters. He admitted on cross-examination that he was not arrested, was not told that he was under arrest, and that the inspector never restrained him. He categorically denied that the two envelopes, both of which are addressed to Box 129, Southboro, Mass., in fact came from that box on the day in question. I find, on the contrary, that they did, as testified to by Inspector Zygmunt.

I further find that defendant Appell is a well-educated, intelligent man, who attended cryptographic school at Fort Monmouth, New Jersey, for a period of seven months, that he studied law nights at Boston University and Northeastern University, that he speaks three languages, that his experience includes 7½ years as a Claims Adjuster for the Veterans Administration, and that he has passed state examinations both for insurance adjusters and realtors. Having the foregoing in mind, I rule that no rights of Appell under the *Miranda* decision [Miranda v. State of Arizona], 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or the *Escobedo* decision [Escobedo v. State of Illinois], 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) were violated, in that defendant Appell was at no time in custody or otherwise deprived of his freedom in any significant way, that he was in fact aware of his rights, that he exercised them by calling and consulting with his attorney, and that the statements he made after the first unsuccessful attempt to reach his attorney on the telephone have clearly been shown to be voluntary on his part having in mind his age, education, experience, and the complete absence of any compulsion in fact or of any circumstances amounting to the psychological compulsion adverted to in the *Miranda* opinion. See United States v. James Shelton Davis,

Wyzanski, Chief Judge, (D.Mass.), docket number 66–68–W, decided August 1, 1966, and Irwin v. United States, 338 F.2d 770, 777 (9th Cir. 1964), cert. denied 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433, and Kerns v. United States, 381 U.S. 919, 85 S.Ct. 1548, 14 L.Ed.2d 438 (1965).

The defendant's motion for the suppression of evidence is denied.