**People of the State of Illinois, Plaintiff-Appellee, v. Luther Roy, Defendant-Appellant.**

**Gen. No. 53,419.**

First District, Second Division.
April 21, 1970.

Rayson and Hutchison, of Tinley Park, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Laurence J. Bolon, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of the crime of indecent liberties with a child and sentenced to a term of four years to five years in the penitentiary. He appeals. Defendant's motion made during oral argument to waive the filing of an abstract or excerpts of record was allowed.

Michael Veradi testified that on October 5, 1967, he was thirteen years of age and attended junior high school in Harvey, Illinois. He testified that he attended classes in the morning on that day, and that he ate lunch at noon at the De Mars Restaurant in Harvey. As Michael was paying his bill about 12:30 p. m., he noticed defendant standing behind him, and as he walked out of the restaurant, defendant followed.

Outside the restaurant Michael asked the defendant to purchase some tickets for a function being held by his school. He testified that defendant stated that he had no money with him, but suggested that the boy accompany him to his apartment where he would get some money. Michael testified that defendant then told him that he could make two dollars if he stayed with him until 1:00 p. m. Michael agreed and the two drove off in defendant's automobile.

Michael testified that defendant told him that he had an appointment in Chicago Heights, and that he and defendant drove in that direction for that reason. After a 45- to 60-minute ride, the pair stopped at a tavern where defendant consumed an alcoholic drink and Michael a soft drink. The pair then returned in defendant's automobile to defendant's apartment, the latter trip taking 25 to 30 minutes.

Michael testified that in the apartment, he seated himself on a chair near the television which was switched on by the defendant. Defendant then mixed an alcoholic

drink and seated himself on the couch. Michael testified that defendant summoned him to the couch, unbuttoned and removed his (Michael's) shirt, several times placed the mixed drink glass to his (Michael's) lips for him to drink, and fondled his (Michael's) penis for several minutes. Defendant asked Michael if he "liked it"; Michael answered in the negative and stated that he wished to go home. While driving back to the De Mars Restaurant where Michael had earlier left his bicycle, defendant asked him if he wished to return to the apartment and the boy replied in the negative. They arrived at the restaurant about 2:30 p. m.

When Michael arrived home he received telephone calls from his sister and from his mother. Later that day Michael and his mother and father went to the vicinity of defendant's apartment and noted the license plate number of defendant's automobile parked in front of the apartment. The three then drove to the Harvey Police Station.

Harvey Police Officer Howard Farning testified that at approximately 8:55 p. m. on this day, he and his partner, Officer Hunt, went to defendant's apartment and knocked on the door; defendant, clad in his pajamas, opened the door. The officer testified that he asked the defendant if his name was Luther Roy and if he owned the automobile parked outside. Defendant responded in the affirmative to both questions and the officer then asked him "if he would come down to the Harvey Police Station with us, we would like to talk to him." The defendant consented, and upon going to change his clothing, he asked the officers, "Is that about the boy I had up here?" Defendant was then transported to the Harvey Police Station.

Defendant, testifying in his own behalf, stated that he met Michael Veradi in the De Mars Restaurant on the afternoon in question and that the boy asked him for a

55

quarter. Defendant said, "No," whereupon the boy asked him to purchase tickets to his school's function. Defendant again declined and told Michael that he had to drive to Chicago Heights to keep an appointment. He testified that the boy then asked if he could accompany defendant for the ride. Defendant declined, stating that Michael had to return to school that afternoon, but Michael said that classes had been canceled because of a teachers meeting that afternoon. Defendant testified that after some further insistence by the boy, he agreed to take him for a ride to Chicago Heights.

Defendant testified that during the ride, the pair talked about baseball, and that Michael later stated that he was hungry and also stated that he was skipping school that afternoon. Defendant told him that there was no place in the area to eat, and that he should either go back to school or go home. He testified that Michael asked him if he had a color television set at home, which defendant stated he did. Michael then asked if he could watch a World Series baseball game on the set, and defendant declined. The pair got into a heated exchange of words, and defendant suggested that they stop for something to drink. On their return trip to Harvey, Michael continued to insist that he be allowed to watch the baseball game on defendant's color television. Defendant testified that he finally consented to the boy watching a half inning of the game.

In the apartment, Michael seated himself in a chair near the television and defendant switched on the set. Defendant mixed himself an alcoholic drink, and sat in the kitchen with the drink until he heard that a half inning of the game was over. He testified that he then walked over to the television, switched it off, and told Michael, "That is all, Mike, let's go."

Defendant testified that Michael again asked if defendant would purchase tickets from him, that he again

refused, and that the pair left the apartment. Defendant testified that the time spent in the apartment was exactly five and one-half minutes, and that they left the apartment at 12:53 p. m. Defendant further testified that he drove the boy back to the De Mars Restaurant, arriving there at 12:55 p. m. Defendant then drove to his wife's place of employment.

Defendant denied touching or in any manner fondling Michael Veradi, and further denied forcing him to accept the alcoholic drink in the apartment.

The record also reveals that Michael denied knowing the defendant prior to the incident; defendant, on the other hand, testified that he knew Michael by sight because Michael used to play with some boys who lived next door to the defendant, and that defendant would on occasion say hello to and speak with the boys.

Defendant filed a pretrial motion to suppress certain statements allegedly made by him on the day of the incident, among which was the statement made in the apartment to the police officers, testified to by Officer Farning. At the hearing on the motion defendant testified that shortly before 9:00 p. m. on the day in question, two uniformed police officers from the City of Harvey Police Department came to his apartment and inquired of him whether he had taken a boy for a ride in his automobile. Defendant replied in the affirmative, and the officers thereupon asked him to accompany them to the police station. Defendant testified that the officers stated that no complaint had been filed against him, but that they would not tell him why there was any possibility of a complaint being filed against him when he inquired. Defendant testified that he asked to telephone his wife, who was at a meeting, but the officers refused and said that he could be taken care of later.

Defendant testified that he accompanied the officers to the police station. He stated that he was asked what

he had to say about the matter, and that he replied that there was nothing to say, because he merely gave a boy a ride in his automobile. He testified that he asked to be allowed to contact his family so they could contact an attorney, but was unable to contact his family until shortly before 11:00 p. m. that evening.

Defendant testified on cross-examination that he spoke to the Veradi boy's mother at the station between 10:15 and 10:30 p. m. and that he denied to her that he took indecent liberties with her son.

Officer Farning testified on behalf of the People at the hearing on the motion. He related that on the evening in question he and Officer Hunt were assigned to investigate a report of a charge of indecent liberties. The two officers went to the defendant's apartment, knocked on the door and asked defendant if he was Luther Roy, to which he replied, "Yes." Officer Farning then asked him if he would go with the officers to the police station because they would like to talk to him.

The officer testified that defendant stated that he was willing to go with the officers and that as he was changing his clothes, the defendant asked the officers, "Is this about the boy that was up here?" Officer Farning stated that he responded, stating, "What boy?" and that the defendant replied, "The one I had in the car." The officer testified that defendant then told him that he picked the boy up at a restaurant in Harvey, took him for a ride, brought him up to his apartment, and took him back to the restaurant. The officer finally testified that defendant was given no constitutional warnings because he had made the statements before they arrived at the station.

On cross-examination the officer testified that when he and his partner first entered the defendant's apartment, he did not ask the defendant whether he had taken the boy for a ride, nor did he tell the defend-

ant at that time that the officers had received an oral complaint from a woman, but that no formal complaint had then been made against him. The officer also testified that he asked defendant no questions other than those asked initially upon the officers entering the apartment.

Mary Veradi, Michael's mother, testified that she had a conversation with defendant at the police station on the night in question, but the trial court sustained an objection to her testifying as to the content of that conversation. Officer Hunt was also called by the People; his testimony was substantially the same as that given by Officer Farning.

The trial court suppressed all statements made by the defendant except the one made when the officers first entered the apartment, which was testified to by Officer Farning at trial.

Defendant first maintains that the trial court committed error in admitting the statement testified to by Officer Farning into evidence, inasmuch as it was made after he was placed under arrest and without prior constitutional warnings. We disagree.

██ The evidence introduced at the hearing on the motion to suppress by the People and by the defendant was somewhat in conflict, the resolution of which was for the trial judge. Under the People's evidence, the circumstances surrounding the making of the statement clearly shows that the defendant was not under arrest at the time the statement was made and further shows that the statement was voluntarily made, without prompting or solicitation on the part of the officers. Being a voluntary utterance, the statement is not one which falls within the applicability of Miranda v. Arizona, 384 US 436.

As stated in the case of In re Orr, 38 Ill2d 417, 231 NE2d 424, at 423:

> "All agree that Miranda does not require police to interrupt a suspect in the process of making a spontaneous statement in order to warn him of his constitutional rights, and that a statement made in the absence of any questioning is not inadmissible by virtue of the failure to give such warning. (Citing cases.)"

In the Orr case, a statement made by the defendant, who was under arrest at the time but who had received no constitutional warnings, was held admissible, inasmuch as it was voluntarily made and was not the result of questioning by the authorities.

The officers in the instant case merely knocked on the door to defendant's apartment, asked defendant if he was Luther Roy, and asked him if he owned the automobile parked outside. Defendant responded in the affirmative to both questions, and also consented to going with the officers to the police station. While defendant was in the process of changing his clothes, he asked the officers if the matter concerned the boy he was with earlier that day. The defendant was not under arrest at the time the statement was made, the statement was made voluntarily and was not prompted by any police questioning. The questions asked by the officers related solely to defendant's identity and to whether defendant would accompany them to the police station.

The only difficulty which arises with regard to the statement is as to its content, and consequently as to its weight: whether the statement related to the boy's presence only in the automobile, as testified to by defendant, or whether it related to the boy's presence in the apartment, as testified to by the officer. This again was a matter for resolution by the trier of fact.

The cases cited by defendant are inapposite on their facts. In Oroczo v. Texas, 394 US 324, the officers questioned the defendant not only as to his name, but

also whether he had been at the place where the shooting in question occurred, whether he owned a gun, and where the gun was located; defendant there gave incriminating answers to each of the questions asked. Defendant there had been under arrest and was not advised of his constitutional rights, and the Supreme Court stated, at page 326 of the opinion, that the police had "questioned petitioner about incriminating facts" before advising him of his rights. Such is clearly not the situation here.

In United States v. Appell, 259 F Supp 156, and in Gray v. United States, 394 F2d 96, defendants gave their statements voluntarily and at a time when they were not under arrest, as is the situation here.

Defendant next contends that the People failed to prove that the defendant was of the age of seventeen years or upwards.

■ It is necessary, as an element in the chain of proof in a case of this nature, that the age of both the victim and the accused be proven by substantial evidence. People v. Rogers, 415 Ill 343, 114 NE2d 398.

■ In the instant case, Officer Farning testified that he knew defendant's exact age to be forty, and later related it to be "in the forties," based upon his observations of the defendant in the courtroom. An objection to that testimony was overruled and the officer's opinion in this regard was allowed to stand. This was error.

However, that error was cured by later questioning of the same witness about an opinion as to whether the defendant was seventeen years of age or upwards; the witness answered in the affirmative and testified that defendant was seventeen years of age or upwards. No objection was made to this testimony, and in the absence of a specific objection, the testimony of the witness will be allowed to stand. People v. Davis, 10 Ill2d 430, 140 NE2d 675; People v. Claussen, 367 Ill 430,

11 NE2d 959. Finally, defendant himself testified that he was forty years of age.

The final two points raised by the defendant essentially challenge the sufficiency of the evidence for the People. We are of the opinion that the People presented evidence of a clear and convincing nature from which the judge had a right to find the defendant guilty beyond a reasonable doubt of the crime of indecent liberties with the child.

The account given by Michael Veradi of the two-hour period spent in the defendant's presence was unshaken on cross-examination. The boy made immediate complaint to his parents, as is evidenced by the short length of time elapsed between the incident and the custody of the defendant. The police officer's testimony concerning the statement made to the officers in the apartment is clearly against defendant's interest in this regard, as is his admission at trial that he, a man in his forties, permitted a boy of thirteen to come to the apartment on the afternoon in question, allegedly to watch the baseball game on color television.

The credibility of the witnesses and the weight to be given to their testimony is a matter for the trial judge, where a jury has been waived. People v. Arnold, 2 Ill2d 92, 116 NE2d 882. The evidence of one witness, where credible and the evidence clear, is sufficient to sustain a conviction, even though the evidence is contradicted by the accused. People v. O'Connell, 76 Ill App2d 389, 222 NE2d 165.

For these reasons the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.